Staples, J.
The plaintiffs in the court below were manufacturers of tobacco in the town of Danville, and the was at the same time engaged in the business of manufacturing boxes to press manufactured tobacco. The defendant agreed to furnish plaintiffs for the year 1870, during the manufacturing season, as many boxes as the latter would need, at the price of sixty-five cents per box. In accordance with this arrangement, defendant furnished the plaintiffs all the boxes they needed in the year 1870. Plaintiffs pressed their manufactured tobacco in these boxes, and they shipped a large portion of it to their commission merchants in Baltimore. Of the tobacco so shipped, one hundred and sixty-six half boxes, containing about ten thousand pounds, was moulded, in consequence of unseasoned timber having been used in making the boxes, and eight thousand pounds remaining in the factory were found, on examination, to be moulded from the same cause. The plaintiffs’ damage arising from the moulded tobacco is nine cents per pound.
It is not claimed that the defendant expressly warranted the boxes, or that he knew they were not suited to the purposes for which they were ordered. The evidence shows, however, that the timber used in making the boxes for the plaintiffs had been unduly exposed to,the weather, and there can be no doubt but that the defendant was apprized of the fact. It also appears that it was customary to rely on the manufacturer of boxes for the selection and use of proper box material and timber, and the manufacture of suitable boxes, and it is not customary for tobacco manufacturers to subject the boxes furnished them by box manufacturers to any test to see whether they are made of thoroughly seasoned or dry timber, but they rely upon the box manufacturer to do this, and that it is his business to do so.
Upon these facts two questions are presented. Is the defendant liable in damages to the plaintiffs for the injury *521 to the tobacco, and if so, what is the measure of recovery? t i ii -ii i-In discussing these questions, I shall consider the subject without reference to the alleged Usage or custom proved a part of the plaintiffs’ case.
According to a well known rule of the common law upon a sale of personal property, there is no implied warranty as to its goodness or quality. The maxim “ caveat ernptor” applies in the absence of fraud or express warranty. Several modifications of this rule have, however, been recognized by the courts, perhaps, as well established as the rule itself. One of these is, that upon an executory contract of sale, where goods are ordered for a particular use or purpose, known to the seller, the latter impliedly undertakes they shall be reasonably fit for the use or purpose for which they are intended. Such a case, according to the authorities, is plainly distinguishable from that of an executed sale of a specific chattel, selected by the purchaser, upon which no implied warranty arises. The distinction seems to be somewhat refined and technical at first view, but it is founded in sound reason, and is sustained by the authorities. Where the purchase is of a defined ascertained article, the vendor performs his part of the contract by sending the article, and in the absence of fraud or some positive affirmation, amounting to a warranty, he is not liable' for any defect in the quality. The purchaser, in selecting the particular article, relies upon his own judgment, and takes upon himself the risk of its answering his purposes. If he desires to secure himself against loss, he ought to require an express warranty. In the absence of such warranty, the rule of caveat ernptor must govern. Where, however, the purchaser does not designate any specific article, but orders goods of a particular quality, or for a particular purpose, and that purpose is known to the seller, the presumption is the purchaser relies upon the judgment of the seller; aud the latter, by undertaking to furnish the goods, impliedly undertakes they shall be rea *522 sona^^7 ^ f°r ^le purpose for which they are intended; and he will be answerable for anv defect in the material, in the construction, by which the value is diminished. This rule applies with peculiar force where the seller is the manufacturer.
Whether the seller would be held liable for a latent defect of which he is ignorant, and against which human skill could not provide, is a question which does not arise here and need not be answered.
Numerous cases may be found in the books illustrating these principles. It is only necessary, however, to refer to two or three of these bearing upon the question. One of these is Mason v. Chappell, 15 Gratt. 572. There it appeared that the defendant sold the plaintiff one hundred aud fifty barrels of an article manufactured by defendant called “ Chappell’s Fertilizer,” to be used on plaintiff’s land. The defendant recommended the fertilizer as a valuable manure, but there was no warranty and no allegation of fraud or deceit. The plaintiff, finding the alleged fertilizer unfit for use, brought his action for damages. This court held the action could not be maintained. The decision was placed upon the ground that the transaction was a sale of a specific ascertained article, upon which there was no implied warranty, and the seller could not be held answerable for a defect in the quality in the absence of fraud or an express warranty. Judge Robertson, in delivering the opinion of the court, said, “If the plaintiff, relying op the defendant’s skill and judgment, had applied to him to furnish a manure which would produce the effect attributed to ‘Chappell’s Fertilizer,’ without specifying what particular kind of manure he wanted, and the defendant had accordingly furnished an article which proved to be entirely worthless, there would be good ground for imputing an implied warranty. See also Chanter v. Hopkins, 4 Mees. & Welsby, 399; Benjamin on Sales,657, and cases cited ; Story on Sales, § 372; 1 Smith’s L. Cases.
*523 The case of Brown v. Edgington, 2 Man. & Gran. 279, is one of a contrary character. There the plaintiff, being in want of a rope for the purpose of raising pipes of wine from his cellar, the defendant undertook to supply a rope for the purpose, but furnished a defective one, and the plaintiff brought his action for the damage sustained by the breaking of the rope and the consequent loss of a cask of wine. It was held that the defendant was liable upon the implied warranty. And where copper sheathing was ordered for the purpose of sheathing a vessel, to be manufactured by the seller, and it proved to be worthless for any such purpose, it was held that as the seller knew the purposes to which it was to be applied, a warranty was implied on their part that it was fit for the purpose intended. Jones v. Bright, 5 Bing. R. 533; 3 Moore & Payne, 155; Story on Sales, 376.
One of the most recent and best considered decisions on this subject is that of Jones v. Just, 3 Q,. B. L. R. 197. Mellor, J., in delivering the judgment, reviewed the decisions with great clearness and ability. Among other things, he said, where a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in-that case an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied. In such case, the buyer trusts to the manufacturer or dealer, and relies upon his judgment and not upon his own. See Benjamin on Sales, § 655, and numerous cases cited in notes.
These principles are decisive of the case in hand. The transaction was not a sale of an existing chattel selected by the plaintiffs, but an executory contract to manufacture and deliver, from time to time, as they might be needed, a number of tobacco boxes for a particular purpose, known to the defendant. The defendant, in undertaking to fur *524 nish the boxes, impliedly agreed they should be reasonably fit for that purpose. Had the plaintiffs gone to the defendant’s factory, and themselves selected certain boxes, such as they believed would answer their purposes, it is very clear the defendant would not be liable, however worthless the boxes might be, because the plaintiffs in that case must have relied on their own skill and judgment exclusively. But the plaintiffs made no selection, they left that to the defendant; they x’elied upon his skill and judgment as a manufacturer to furnish an article suited to the business in which they were engaged.
“If (said Tindall, C. J., in Brown v. Edgington), the purchaser relies upon the judgment of the seller, and informs him of the use to which the article is to be applied, the transaction carries with it an implied warranty that the thing furnished shall be fit and proper for the purpose for which it was designed.”
It is no answer to say that here the defendant was ignorant of the defect in the boxes, and that he used every proper precaution to guard against it.
Neither the ignorance of the seller, nor the exercise of care and diligence on his part, can exempt him from liability, when there is a warx’anty, whether it be express or implied. In Jones v. Bright, 5 Bing. 533, Best, C. J., said: “ It is the duty of the courts in administering the law to lay down rules calculated to prevent fraud, to protect persons who are necessarily ignorant of the qualities of a commodity they purchase, and to make it to the interest of manufacturers and those who sell to furnish the best article that can be supplied. By providing proper matex’ials, a merchant may guard against defects in manufactured articles.”
As a matter of fact, the defendant did not exercise due care in the selection of his materials. The evidence shows ' that red oak and white oak timber was used in the manufacture of these boxes; that it was a long while exposed to *525 the weather, and that red oak is very porous and will absorb much moisture when so exposed. These facts, I think, show the defendant did not give proper attention to' the preparation of the timber for his boxes, and they fully explain the cause of the damage to the tobacco.
It has been argued, however, that the plaintiffs were better judges of tobacco boxes than the defendant; that they had better opportunities of finding out the defect than he had, and they were grossly negligent in not examining the boxes.
How, it is proved to be exceedingly difficult to detect moisture in timber after it is worked up into boxes. Suitable material is not obtained by merely inspecting the lumber—a very unsafe test in any case—but by properly seasoning and preparing it before it is converted into boxes. The defendant, as a manufacturer, knows, or ought to know, what sort of material is suitable for his business, and if he, in good faith, can claim that the defect escaped his attention, with what propriety are the plaintiffs to be charged with negligence in failing to discover it? In cases like the present, the question is not whether the purchaser has an opportunity of examining the article, but whether he has, in fact, examined it for himself, and whether the defect be one readily discoverable upon inspection. He is not bound to examine, for he has the right to rely upon the judgment of the seller, and to take it for granted the latter has furnished an article answering the terms -of the contract.. 4 Chitty on Contracts, § 633; Story on Contracts, §834; Rodgers & Co. v. Niles & Co., 11 Ohio St. R. 48. In this case, the plaintiffs clearly acted upon that presumption, and they are not chargeable with negligence n so doing. They have, therefore, a right of action against the defendant for the breach of warranty.
The next question is as to the extent of their recovery. As already stated, the plaintiffs’ tobacco was damaged to the extent of nine cents per pound by the mould resulting from the *526 use of unseasoned timber in the boxes furnished by defen- . , J dant, and upon this estimate the finding of the jury is based. is insisted that the defendant cannot be held responsible for this damage, which is merely consequential; that the measure of his liability is simply the difference between the actual value of the boxes and what (hey would have been worth had (hey conformed to the warranty.
Now, it is easy to see that if this measure of recovery be adopted, the plaintiffs are not entitled to anything. For if we look merely to the value of the boxes, without reference to the injury of the tobacco, the plaintiffs have, in fact, sustained no loss. Had they purchased from the defendant a machine intended for a particular purpose, which proved entirely worthless, no difficulty would occur in ascertaining the difference between a good and a bad machine, and fixing the loss accordingly. But here, apart from the injury to the tobacco, the plaintiffs have sustained no damage, because’the boxes as made answered all the purpose intended as fully as if they had been constructed of the best material. It is not to be supposed that such a result was in the contemplation of the parties at the time (hey made the contract as the probable consequence of its breach.
It is well settled, that the plaintiff is entitled, as a general rule, to recover such damages as are a natural and proximate result of the wrongful act of the defendant. Peshine v. Shepperson, 17 Gratt. 472, 485.
Numerous cases hold that, in an executory contract of sale to furnish an article for a particular use, if the article is not fit for such use the purchaser is entitled to indemnity for the loss, which the non-performance of the contract has occasioned him, where the loss is the natural consequence of the breach complained of.
Thus, in Brown v. Edgington, already cited, where the defendant sold the plaintiff a rope to be used in raising heavy weights, it was held that the plaintiff was entitled *527 to recover the value of the rope and consequential damages for the loss of a cask of wine falling and lost from a defect in the rope. ,
The ease of Boradaile v. Brunton, 2 Moore R. 582, was . an action for a breach of warranty in the sale of a chain cable. Through a defect in the cable, an anchor of the plaintiff, to which it was attached, was lost. It was held the plaintiff was entitled to recover the value as well of the lost anchor as of the cable.
It is, however, useless to multiply citations in support of this-doctrine. The cases on the subject are very numeous, and may be found in Field on Damages, note to sec. 278; Benjamin on Sales, sec. 993, and notes; Smeed v. Ford,, 102, Eag. C. Law R. 600; Passinger v. Thorburn, 34 New York, 634, and the authorities there cited.
These decisions, and the principles they announce, I think fully sustain the plaintiffs’ right to recover special damages for the injury to their tobacco, as the natural and proximate .result of the defendant’s failure to comply with « his contract. If the defendant did not intend to be bound by the rule of law which holds him to an implied warranty, he ought so to have provided, and thus put the plaintiffs upon their guard.
That rule (as was said by Park, J., in Jones v. Bright, 5 Bing. 533) is of great importance, because it will teach manufacturers that they must not undersell each other by producing goods of inferior quality, and that the law will protect purchasers who are necessarily ignorant of the commodity sold.
Another point has been raised,' and is much relied on by the learned counsel for the defendant, which might have been noticed earlier, but may be properly considered here.
That is the allegata and probata do not correspond ; that the declaration avers an express warranty, and a scienter in different counts, while the proof shows neither. Nothing *528 however, is better settled than that under a count alleging ' . b b a warranty, the plaintiff may show an express or implied For whether the warranty be express or be implied, the legal effect is the same, and an averment of warranty must, of necessity, be satisfied by proof of one or the other. And so if the declaration would be good without an averment of a scienter, that averment may be treated as surplusage, and the action sustained upon other sufficient grounds. Williamson v. Allison, 2 East. R. 446.
The first and fourth counts in the declaration before us are substantially the same as the tenth count of the declaration in Jones v. Bright. That count stated that the defendants, by falsely and fraudulently warranting the copper manufactured by them to be fit and proper for the purpose of sheathing the bottom of a vessel, sold the copper to the plaintiffs. The evidence did not shqw either fraud or an express warranty, and yet the plaintiffs were held entitled to recover upon the implied warranty. But if we endorsed this view, there is no difficulty in sustaining the verdict under the second count, which avers neither a warranty nor the scienter.
It only remains to inquire whether the circuit court erred in admitting the alleged usage or custom in the town of Danville.
The plaintiffs asked one of their witnesses whether or not it was customary in Danville, in the year 1876, among the manufacturers of tobacco, in ordering tobacco boxes of the manufacturer, to rely on the latter to make the boxes suitable and fit for the purposes for which they were ordered. To the answering this question the defendant objected ; but the court overruled the objection, and the witness answered the question in the affirmative; to which ruling the defendant excepted. It is unnecessary here to enter into a discussion of the principles of law governing in the construction of contracts as influenced by usage or *529 •custom. It may be conceded, for the purposes of the argument, that the evidence adduced is illegal, and yet it' does not follow the judgment must, therefore, be It is very true that, as a general rule, where improper evidence is admitted, the court will set aside the verdict, because it is impossible to say what effect the evidence may have had on the mind of the jury; but that rule does not apply where all the facts are certified, and upon those facts the appellate court clearly sees the prevailing party is entitled to the verdict independently of such evidence.
If the court is satisfied that the testimony could not possibly have had any influence on the mind of the jury prejudicial to the objecting party, and that a verdict in his favor must have been set aside, there could be no sort of propriety in disturbing that verdict. 2 Gra. & Wat. on New Trials, pp. 635, 645, 651; see 9 vol. United States Digest, First Series, p. 638, § 635, 682, where numerous cases cited; see Danille Bank v. Waddill, 27 Gratt. 448.
In the case before us all the facts are certified, and it is apparent there was no sort of conflict in the testimony. Upon those facts, the plaintiffs are plainly entitled to recover without reference to the alleged usage or custom. The liability of the defendant grows out of his warranty on the sale of the goods for the purposes intended, and evidence of the custom would add nothing to the legal operation and effect of the warranty. Had the jury found for the defendant, this court would not hesitate to set aside the verdict as contrary to law. Under such circumstances, it would be a vain thing, as it would be unjust to the plaintiffs, to interfere with the verdict. My opinion is, therefore, to affirm the judgment of the circuit court.
The other judges concurred in the opinion of Staples, J.
Judgment affirmed.