JAMES W. CALLAHAN *et al.*, Respondents, v. CHARLES H. MORSE *et al.*, Appellants.

**St. Louis Court of Appeals, May 28, 1889.**

1. **Practice, Appellate.** This court will not disturb a finding of facts made by a trial court, sitting as a jury, if it be sustained by substantial evidence; nor will this court reverse the judgment of the trial court on the ground of error which is harmless.

2. **Damages :** BREACH OF WARRANTY.  When a tank, which is built to order and is not as warranted, bursts, and the bursting of it results not from defects covered by the warranty but from careless handling of it by the vendee, the damages thus occasioned cannot be recovered from the warrantor.

*Appeal from the St. Louis City Circuit Court.* HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*Hiram J. Grover*, for the appellants.

The court erred in holding that the doctrine laid down in *Yeats v. Ballentine*, 56 Mo. 530, had any application to this case.  The decision there proceeded upon the theory that, although the thing delivered might not comply with the contract of sale, yet if the purchaser accepted it and used it, and was benefited by it, the law created a new contract with a new consideration, to-wit: The purchaser must be held to pay for the

benefit, or advantage derived by him from such use and enjoyment. The mere delivery of the tank to the defendants and their action on repairing the tank did not constitute an acceptance of the tank by them. 2 Benjamin Sales [4 Ed.] sec. 1350; *Calhoun v. Paule*, 26 Mo. App. 285; 1 Smith's Leading Cases [8 Ed.] p. 321; *Haysler v. Owen*, 61 Mo. 273 and 274; *Munkres v. Railroad*, 72 Mo. 514; *Atherton v. Ryder*, 139 Mass. 371; *Cook v. Soule*, 46 N. Y. 420; *Campbell v. Miltenberger*, 26 La. 72; *Pinny v. Andrews*, 41 Vt. 641; *Fish v. Tank*, 12 Wis. 278, 305; *Cook v. Cartner*, 9 Cush. 266; Sedgwick, Damages [7 Ed.] p. 165. The defendants were entitled to resort to the breach of the express warranty in this case either as a defense or affirmative cause of action. *Brown v. Weldon*, 27 Mo. App. 253, 263; *Brown v. Turner*, 77 Mo. 494; *Voss v. Maguire*, 18 Mo. 477, 481; *Starr Glass Co. v. Morey*, 108 Mass. 573; *Cook v. Cartner*, 9 Cush. 266; R. S. Mo., secs. 3521, 3522; 2 Benjamin, Sales [4 Ed.] p. 1153; *Branson v. Turner*, 77 Mo. 493; *Courtney v. Boswell*, 65 Mo. 196; *Voss v. Maguire*, 18 Mo. App. 477, 481; *Martin v. Maxwell*, 18 Mo. App. 180; *Kerr v. Haymaker*, 20 Mo. App. 350; *Calhoun v. Paule*, 26 Mo. App. 274; *Brown v. Weldon*, 27 Mo. App. 261; *Hayner v. Churchill*, 29 Mo. App. 676; *Brigg v. Sheldon*, 99 N. Y. 517; *Day v. Poole*, 63 Barbour, 527; s. c., 52 N. Y. 416; Benjamin, Sales, Bennett's notes, p. 864, note. Plaintiffs, having agreed to deliver this material for the price of three hundred and sixty dollars, sued for $448.78, and introduced evidence to prove the value of such material as of March 8, 1887, the date of delivery; whereas they should have proved the value as of the date of the order for the material, to-wit: December 29, 1886, the evidence disclosing the fact that there had been an advance in the market price of the material between the dates. The real value of the material on the date of the contract might have been less than the contract price; in which event plaintiff, suing on a

*quantum valebat*, could not be allowed to recover the contract price. Except in the case of building contracts or other contracts to do work on real estate, there is no rule of law in force in this state which allows a party, who has a right of action arising out of a contract only, to ignore the contract, treat it as a nullity and recover outside of the contract on what is called a *quantum meruit*. *Hannel v. Freund*, 17 Mo. App. 624; *Gruenzer v. Fur Co.*, 28 Mo. App. 266, 267; *Haysler v. Owen*, 61 Mo. 274–5.

*John R. Myers* and *John M. Holmes*, for the respondents.

A purchaser purchasing upon his own judgment, and not relying upon a warranty express or implied, cannot recover from the vendor on account of any defects which were patent and which were known to him at the time he bought. Benj. Sales., secs. 661, 657; 1 Chit. Cont. [11 Am. Ed.] p. 632. A warranty does not extend to patent defects known to the buyer, especially when the buyer is purchasing upon his own judgment. Benj. Sales, sec. 616, and note 2; sec. 618, note L; *Yeats v. Ballentine*, 56 Mo. 530; *Haysler v. Owen*, 61 Mo. 270. In this case appellants sold to their vendee, relying upon their own judgment exclusively, and with full knowledge of all defects now claimed to have existed, and the vendee bought from them with the same knowledge and relying upon his own judgment. The vendee McCormick filled the tank in a careless and improper manner. The judgment of the court below sitting as a jury is final as to the facts, and no error of law is shown by the record. *Meyer v. McCabe*, 73 Mo. 240; *Noble v. Metcalf*, 20 Mo. App. 362.

ROMBAUER, P. J., delivered the opinion of the court.

The plaintiffs are tank manufacturers in New Iberia, Louisiana. The defendants are dealers in water works

supplies in St. Louis, Missouri, and occasional contractors for the erection of water works under the firm name of Fairbanks & Co. The tank hereinafter spoken of is a water tank used as part of such water works, and was known by the defendants to have been ordered for such purpose.

This being the situation of the parties, they entered into a contract evidenced by the following correspondence:

"December 20, 1886.
"*Messrs. Fairbanks & Co., St. Louis, Mo.*

"GENTLEMEN:—We will furnish you one tank without hoops F. O. B. cars here, twenty-four-foot bottom and twenty-foot stave, made of three-inch material, in good workmanlike manner, for the sum of two hundred and fifty dollars ($250). If you desire this tank we will have to have an answer inside of ten days; can furnish you inside of thirty days from receipt of order. If necessary we will furnish the same tank with thirteen hoops. Bottom hoop 4-16x4, balance 1-4x4 inch iron with two sets of wrought iron lugs, to each, and double bolts in the bottom hoop and single bolts in others. All F. O. B. cars here for the sum of three hundred and sixty dollars ($360). Let us hear from you with order.

"Respectfully yours,
"CALLAHAN & LEWIS,"

"ST. LOUIS, December 29, 1886.
"*Messrs. Callahan & Lewis, New Iberia, La.*

"GENTLEMEN :—We have your favor of the twentieth. You may get us out one tank made of three-inch, red heart, cypress staves, twenty feet long, twenty-four feet in diameter at the bottom, to have thirteen hoops as follows: bottom hoop to be 5-16x5 inches, the remaining twelve to be 1-4x4 inch iron, each hoop to have two sets or pairs of wrought iron lugs; the bottom hoop to have double bolts, the remaining hoops to have single

bolts, all bolts to be large enough to have as much strength as the riveted joints. The tank must be in first class shape, lumber all of even thickness. Staves all of same length, and tank to have a taper of six inches on each side, making a difference in the diameter of twelve inches between the bottom and the top of the tank. Please make no mistake now, we want a first class job. We will give you shipping instructions later. Please advise us how soon you will be ready to ship.

"Yours Truly,
"FAIRBANKS & Co.

"Each stave to have three three-fourths inch dowels in each edge, and all bottom pieces to have three-fourths inch dowels not over eight inches apart.

. "F. & Co."

On receipt of the letter plaintiffs accepted the order in the following terms:

"NEW IBERIA, LA., January 4, 1886.
"*Messrs. Fairbanks & Co., St. Louis, Mo.*

"GENTLEMEN:—Your esteemed favor of twenty-ninth ult. came duly to hand. Thanks for same. The same shall have our prompt and careful attention. We would like to furnish you also the 24x16, as we have a fine large stock of sixteen-foot staves. With best wishes for the New Year, we are

"Yours respectfully,
"CALLAHAN & LEWIS."

The tank, thus ordered, was intended by defendants to be used as part of water works at Newport, Arkansas, there to be placed on top of a water tower. One McCormick was the contractor for such water works with the town, and the defendants had a contract with him for supplying the engines, pumps, water towers and wooden tank or reservoir, forming part of such water works.

It is conceded by all the evidence, that the plaintiffs were not manufacturers of tanks for water works, being,

VOL. 37—13

prior to their contract with the defendants, engaged mainly in the manufacture of a railroad standard tank of a dimension of twenty-four feet by sixteen, and had but little experience in constructing large tanks containing over five thousand gallons. The defendants were aware of that fact.

While the tank in question was being thus constructed, the plaintiffs wrote to the defendants repeatedly as follows: January 22, 1887. "We will make a No. 1 job of your twenty-four by twenty, all ready except setting up." February 5, 1887: "Will say we have your twenty-four by twenty ready to set up and will finish at our leisure—you shall have a thoroughly first class job." March 5, 1887: "The tank has been set up, knocked down and only waits for a few more hoops." March 8, 1887: "Enclosed please find B. L. and invoice for one tank shipped to Fairbanks & Co., care of A. H. McCormick, Newport, Arkansas. It is in first class shape and trust it will not be delayed."

The component parts of the tank were shipped as per above advice. Upon its arrival in Newport, Arkansas, the defendants' foreman, Parker, wrote the following letter to the defendants:

"NEWPORT, March 28, 1887.
*"Messrs. Fairbanks & Co.*

"GENTS:—There are thirteen hoops on this tank, the first one is five inches, and all the rest are four inches wide; the first is five-sixteenths of an inch thick, the balance are one-fourth of an inch. The question is, are there enough hoops or enough iron in them? The five-inch has one and nine-sixteenths of an inch of iron; the balance have but one inch; it looks light to me. If you think there is not enough you had better send the iron from there. The lugs on these are forged. The first hoop has two three-fourth inch bolts, the balance have one three-fourth inch bolt. All lugs and laps are riveted with six three-eighth inch rivets.

All of which I will have to do over again for they are so badly done.

"Please send me six hundred dollars, and oblige,

"Yours truly,

"E. L. PARKER."

To which letter the defendants replied as follows:

"ST. LOUIS, March 31, 1887.

"*Mr. E. L. Parker, Newport, Arkansas.*

"DEAR SIR:—Put eight three-eighth inch rivets in all the joints in the four-inch hoops and ten rivets in the joints of the five-inch hoop.

"Keep an accurate account in detail of all expense in connection with this work and report same to us promptly.

"Enclosed find check for four hundred dollars."

On April 2, Fairbanks & Co. wrote to plaintiffs as follows:

"Dictated.

"ST. LOUIS, April 2, 1887.

"*Messrs. Callahan & Lewis, New Iberia, Louisiana.*

"GENTLEMEN:—We are in receipt of a letter from our superintendent of construction, at Newport, Arkansas, stating that the tank you furnished us for that place has two three-fourth inch draw rods in the bottom hoop and only one three-fourth inch rod in the balance of the hoops. Also, that the joints and lugs are riveted with six three-eighth inch rivets, and that the riveting is so poorly done that he will be obliged to do it over before the tank is set up.

"We will also say that we shall be obliged to rim out the holes and put in larger draw rods. The three-fourth inch draw rods are not over one-half as strong as the riveted joints, when properly put together.

"We shall also put more rivets in each joint.

"As soon as we get this work done we will send you bill for the same; and, also, the bill for the expense

on the tank shipped to Beloit. We will deduct these amounts from your invoice of March 8, and remit you balance.

"Trusting this will be satisfactory, we remain,

"Yours truly,

"FAIRBANKS & Co."

To which the plaintiffs replied as follows:

"April 4, 1887.

"*Fairbanks & Co.*

"DEAR SIRS:—Answering your favor of the second inst. we will say, your superintendent is in error, we never furnished any three-fourth inch rods. Lugs had eight (8) rivets instead of six (6). We differ from him in regard to riveting. The riveting is all that can be asked. However you did not specify the size of the rivets, number of rivets nor size of bolts to be used. Please refer to our letter of December 20, 1886, and your order of December 29, 1886.

"We have given you what is customary with our trade and sold you the tank at New Iberia.

"Therefore we have nothing to do with the freight to Beloit, and will not pay this or any other charge.

"When we took your order we expected to ship in thirty (30) days. You ordered us not to be in a hurry. In the meantime we had orders for some ten (10) tanks of similar proportion, and used the iron set aside for your tank, and consequently instead of iron costing us ($1.80) one dollar and eighty cents at rolling mill, we had to pay ($2.40) two dollars and forty cents.

"Add to this our expense, hunting all the mill yards for forty (40) miles to find twenty feet dry material, to make staves, and you, gentlemen, will see that we have met with a loss, in order to serve you.

"We felt very much like asking you to cancel your order. But in order to please a customer, who in time, perhaps, would be of some assistance, we bore all this without a murmur. We did not agree to dowel the

staves, which has been done. Please find enclosed corrected invoice for tank, above mentioned, reads three hundred and sixty dollars instead of three hundred and twenty dollars.

> Yours very respectfully,
> "CALLAHAN & LEWIS."

The tank was thereupon set up on the water tower. There was no complaint as to the material or work on the wooden part of the tank nor as to the material of the hoops. The defendants claim that the lugs, bolts and rivets were insufficient as originally furnished, and insufficient after being replaced by their foreman under the order contained in their letter of March 31. That therefore there was a breach of the warranty that *the tank must be in first class shape*, and *all bolts to be large enough to have as much strength as the riveted joints*.

The tank being set up, the contractor McCormick proceeded to pump water into it, whereupon it burst, owing to the insufficiency of its construction as the defendants claim, and owing to the carelessness of McCormick in filling it, as the plaintiffs claim, which bursting resulted in the destruction of its value as a tank and in causing serious injuries to property in the vicinity, for which McCormick paid in the first instance, the defendants prior to the institution of the suit refunding to him the amount paid.

The defendants, claiming that the plaintiffs were legally responsible to them for the loss thus caused, refused to pay for the tank, whereupon the plaintiffs first instituted a suit upon the contract, which they abandoned, and thereafter instituted the present suit, on a *quantum valebat* for the value of the material delivered to defendants at New Iberia, Louisiana. The defendants by answer set up the special contract and a breach of warranty, claiming, by way of counter-claim, the damages sustained by them, by the insufficiency of

the tank, and a counter-claim upon another and different contract in the sale of a tank for Beloit, Wisconsin. The cause was tried by the court sitting as a jury, and resulted in a judgment in favor of plaintiffs on the main issue, and also on the first counter-claim, and in a small judgment in defendants' favor on the second counter-claim.

Upon the close of the evidence, the defendants asked ten instructions, putting before the court the various phases of the evidence on the main cause of action as well as on the counter-claim. The plaintiffs asked two instructions, relating solely to the counter-claims. The court refused all these instructions, and upon its own motion filed in the case a written opinion containing declarations of law and a finding of facts, which is made part of the record. As this declaration and finding raises every question discussed by counsel upon this appeal, we insert it in full. It is as follows :

### "PLAINTIFFS' CAUSE OF ACTION.

"It is the settled law of this state that, where a contractor fails to perform his contract according to the stipulations of his agreement, he cannot recover on the contract. But if the work actually performed by him is of value, and is accepted by the other party, such party would be liable to pay the actual value of the work performed, not exceeding the contract price, after deducting therefrom damages from a breach of the contract. *Yeats v. Ballentine*, 56 Mo. 530 ; *Eyerman v. Association*, 61 Mo. 489 ; *Davis v. Brown*, 67 Mo. 313.

"In this case the plaintiff admits that he did not perform strictly his contract, by suing not on the contract but on a *quantum valebat*.

"He contracted to deliver at New Iberia, Louisiana, a tank made according to certain specifications, with the additional guarantee that it should be a first-class job. By a tank we understand, when we consider all

the circumstances surrounding the parties, was meant all the component parts of a water tank, in a condition ready to be "set up" and in a condition when so set up, or put together, such as to constitute a vessel to hold water.

"The petition describes the component parts of such a tank or vessel, with reasonable certainty, and the evidence shows that they were delivered at New Iberia as agreed, and were, after full inspection, received by the defendant. Independently of any subsequent breach of warranty, on accepting the property, the defendants became then and there liable to pay the reasonable value of the material. When the defendants received the property, they were not satisfied that it was according to contract, and went to work to make it comply therewith, to their satisfaction. In so doing they were put to an expense of $14.55.

"This evidence showed that the property was fully and intrinsically worth the contract price. So the plaintiff is entitled to recover that amount, less the $14.55, expended by the defendant, which the court finds to be a reasonable expense.

"That the defendant was subsequently damaged by a breach of a collateral agreement of warranty, is a separate cause of action, the subject-matter of a counter-claim, to be set up by the defendant.

"The right of the plaintiff to be paid the reasonable value of the property delivered accrued immediately on delivery, and suit might have been brought immediately, before any damages accrued by reason of a breach of warranty.

"The court therefore gives judgment for the plaintiff for the sum of $345.45, with interest at the rate of six per cent. from the date of demand, thirty-first of May, 1887, being the contract price, less $14.55, the cost of putting the tank in condition satisfactory to the defendants.

## "DEFENDANTS' FIRST COUNTER-CLAIM.

"The agreement of the parties being expressed and committed to writing, there is no room for any implied contract of warranty. But undoubtedly there was an express warranty that the tank should be manufactured according to the specifications, and that it should be a first class job. When we consider the circumstances surrounding the contracting parties, there is no difficulty in determining that they meant by first class job, that it should be strictly according to the specifications, and, where there were no specifications detailed, that the tank should be reasonably fit for the purposes for which it was intended, and that it was intended for the purposes of a water tank, to be used in connection with a water works system for the supply of some town or city with water for drinking and other usual purposes. The plaintiff also knew that the tank was to be placed on a tower to be elevated at a greater or less heighth, according to the circumstances.

"Where there is a breach of such a warranty, the injured party is entitled to recover such damages as may be held to have been in the reasonable contemplation of the parties. We think it is quite clear that it was within the reasonable contemplation of the parties that the tank should be put on such an elevation as this one was placed on, and that, if it was so defective as not to be reasonably fit for the purpose of holding water enough to fill it, that it would burst, and as a consequence do injury to persons and property, this ought to be held to have been within the reasonable contemplation of the parties, at the time they made the contract.

"If the defendant had accepted the tank as delivered to them, and placed it in position in a proper manner, and had skilfully fitted it, and it then had burst on account of the fact that it was so defective as to be not reasonably fit, viz., not a first class job, the defendant would have surely been entitled to recover. But this

the defendants did not do. When the tank arrived they gave it a careful inspection, and found that it was defective and not reasonably fit for use, that there were not sufficient rivets attaching the lugs to the hoops, that at least one of the lugs was not sufficient, and that the bolts were not large enough. The defendants then wrote to the plaintiffs, complaining of the rivets and bolts, and informing them that they were defective, that they would put in proper bolts or draw rods and rivets, and would charge the expense to the plaintiffs. They then went to work with the materials to make a tank which, in their opinion, would stand the necessary pressure; they put in new rivets, about ten new draw rods, and repaired or strengthened one lug (by. the way, we may say here that it appeared that this lug was broken when the tank burst, and it does not appear what effect its breaking may have had in causing the accident); when they had reconstructed or repaired the tank so that it was, in their opinion, sufficient, they then, and not until then, set it up. An attempt was made to show that, as soon as they got the letter from the plaintiffs protesting that the work was done according to contract, they abandoned the idea of relying on their own judgment and relied on the assurance of the plaintiffs, but we do not think this was proven.

"Though it is claimed that the evidence showed that the tank burst by reason of defects in other portions of the tank, and that such work as was done by defendants actually served to strengthen, yet, assuming that, we do not think the defendant entitled to recover; we think when the defendant refused to accept the tank, except conditionally, pointed out the defects in it, claimed the right and undertook to put the tank in proper condition at the expense of the plaintiffs, a right they undoubtedly had, they then relieved the plaintiffs of all further responsibility. If, after undertaking at the expense of the plaintiffs to put the tank into a proper condition,

they made an error in judgment, how can they, with any kind of fairness or consistency, make the plaintiffs responsible for that error of judgment and its immediate results. Had they not already elected to take the tank subject to the condition that they should put it into fit condition at the expense of the plaintiffs, and did they not have an action immediately against the plaintiffs for the costs of so putting it into condition ?

"Moreover there is another consideration which ought to prevent the defendant from recovering. The defendants cannot recover against the plaintiffs, unless McCormick could have rightfully recovered against the defendants. For the plaintiffs are only liable under the evidence here adduced could McCormick have recovered from defendants.

"The defendants may fairly be considered in relation to McCormick as a manufacturer.

"Where a manufacturer sells to another an article to accomplish a particular purpose, there is an implied warranty that it is reasonably fit therefor. *Gerst v. Jones*, 32 Gratt. 526; *Poland v. Miller*, 85 Ind. 391.

"Therefore there was an implied warranty on the part of the defendants to McCormick, that the tank was reasonably fit for the purposes of a water tank, and that the defendant would be responsible to him for all damages which might ensue from any breach of the warranty within the reasonable contemplation of the parties. But it cannot be held that damages resulting from the gross negligence of the party, or which could have been prevented by reasonable care, was within the contemplation of the parties.

"Now, what were the facts ? McCormick and his foreman, a skilled mechanic and expert in such matters, examined the tank when it arrived; they were in constant communication with defendant and his agents, they pronounced the tank defective, did not know the lugs and thought the bolts too small. McCormick and his foreman expressed their fears and belief that the tank

did not have sufficient strength to hold the water it was designed to hold. McCormick admits that his foreman told him he was a "damned fool for not substituting new bolts of Russian iron throughout." There was an attempt to show that McCormick had an apprehension about the strength of the bolts, but only feared that the tank could not be drawn sufficiently tight to prevent the water from leaking out, but it is apparent that McCormick knew enough to put him on his guard, and to require of him the duty of using great precautions in filling the tank and testing it.

"When it had been filled to about seven feet, one of the bolts on about the seventh or eighth hoop, which had not yet begun to feel the extreme pressure of the water, broke, and shortly afterwards another broke. McCormick substituted wrought iron bolts for these, and, after waiting some time, he again proceeded with the filling of the tank; paying, so far as the evidence shows, apparently no attention to all these warnings.

"The only explanation he has to give for his apparent carelessness in so doing after two bolts had broken under slight pressure, and after he had expressed the opinion that the bolts were not sufficient, is that he did not think that they would all break at once. How, then, can the defendants claim that it was within the reasonable contemplation of the plaintiffs that they would all break at once, and would cause the tank to burst?

"Therefore we think that the defendants are not entitled to recover on their first counter-claim.

"On the second counter-claim we think the defendants are only entitled to recover $7.50, the cost of plugging up the pin holes, also for refitting the hoops, $16.75, making an aggregate of $24.25 with interest from institution of suit."

It appears, from the foregoing, that the court found the facts to be as follows: *First.* That the property in question was sold by the plaintiffs to the defendants

not as so much lumber and iron, but as component parts of an entire water tank with special warranty that such tank was in conformity with the specifications agreed upon, on all subjects covered by the specifications, and was a first class job, for a water tank of the dimensions described. *Second.* That the defendants, after inspection of the property, accepted it subject to certain reclamations for defects, which were remedied, or were claimed to have been remedied, at an expense of $14.55; that the property was intrinsically worth the contract price and more, and that the only damages, if any, suffered by the defendants and traceable to the breach of the contract of warranty, was the expenditure thus incurred. *Third.* That the bursting of the water tank was not the result of any patent or latent defect in its construction, but the result of the negligence of McCormick in filling it.

The court also declared the law upon these facts to be as follows : *First.* That the defendants, upon delivery and acceptance of the property, became liable to pay its reasonable value, not exceeding the contract price, and had to assert in a cross-action their claim, if any, for damages suffered by the breach of plaintiffs' warranty, *Second.* That the destruction of the tank, and incidental injury to adjacent property, were proximate damages within the contemplation of the parties, and if the damages thus caused were traceable to a defective construction of the tank in matters warranted by the plaintiffs, the defendants could recover for them in their counter-claim; if, on the other hand, such damages were the result of McCormick's negligence, they could not.

We have examined the testimony and find that there is substantial evidence justifying the court's finding of facts. With the weight of that evidence we have nothing to do, as this case is not one reviewable upon the weight of evidence. *Meyer v. McCabe,* 73 Mo. 240. The delivery of the articles in New Iberia, Louisiana, to

the defendants, was not equivalent to their acceptance by them. That proposition was discussed in *Calhoun v. Paule*, 26 Mo. App. 274, and its correctness may be conceded. We may further concede that the defendants had a right to reject the tank upon its arrival at Newport, Arkansas, if it was not in conformity with the plaintiffs' warranty, and even that they had a right to make such alterations in it at the plaintiffs' expense as to conform it to the article warranted. They might do all this without waiving their right of action on the warranty. On the other hand, it must be conceded that their taking possession of it, making such alterations on it as they deemed necessary, and delivering it thereafter to McCormick, their vendee, was some evidence that they accepted it, and that, after the alterations were made, they considered it as being in substantial compliance with the warranty.

The defendants contend that it was an erroneous view of the law for the court to hold that they became liable to pay for the tank upon its receipt and acceptance, and that, thereafter, their sole remedy was by cross-action on the warranty. There has been some conflict of authority on that question, depending on the facts as to when the contract ceases to be executory and becomes executed, and on the further fact whether the breach is equivalent to a partial or total failure of consideration. But it is evident that, if the court on that subject was mistaken in its ruling, the error was harmless. The court permitted a recoupment in favor of the defendants to the extent of $14.55 in the main action, on the ground that there was a failure of consideration to that extent, as such amount was necessarily expended. In finding in favor of plaintiffs upon the counter-claim, the court necessarily held that the breach of warranty did not extend beyond the defects thus remedied, that is to say, that the bursting of the tank was not due to the fact that it was not, when thus reconstructed, up to the warranted standard, but was due to the fact that it

was negligently filled by McCormick. As on this last subject, there was substantial evidence, we are not warranted to reverse the judgment, unless the court applied in its consideration erroneous views of law.

The defendants contend that the court made an erroneous application of the rule discussed in *Yeats v. Ballentine*, 56 Mo. 530, to the facts of this case. The rule in such cases, as defendants contend, is not that a recovery on a *quantum meruit* is justified because the work is of value, but because it is of value to the party accepting it, and if it is of no value to the latter there can be no recovery. Conceding this to be the true limitation, we are still remitted to the original inquiry, whether the bursting of the tank was the result of defects in its construction, warranted against. If it was the result of its subsequent careless handling, the loss caused by the acts of the defendants and their vendee cannot be visited on the plaintiffs, on any theory which we can conceive. The rule stated in *Yeats v. Ballentine* has always been the rule in case of sales of chattels, so that it is immaterial whether we treat this as a building contract, or a contract of sale. It is only in cases of express contract for personal services and illegal contracts, that no recovery can be had upon a *quantum meruit* or *quantum valebat*.

Other propositions are discussed in the exhaustive brief of defendants' counsel, which we cannot notice in detail without extending this opinion to an unseemly length. We may dispose of them with the general remark that they all substantially bear on the same proposition, namely, that, under the law governing an express warranty against latent or patent defects, the trial court should have arrived at a different conclusion of facts. This is no ground on which we can reverse the judgment.

All the judges concurring, the judgment is affirmed.