# Richmond.

BUFORD v. NORTH ROANOKE LAND & IMP. CO.

JANUARY 18th, 1894.

1. DEED—*Construction—After-born child—Case at bar.*—Conveyance of land to " the lawful heirs of J. and R.," who were then living and had three children, and a fourth child was born to them after date of deed : *held,* the deed gave a fee in remainder to three children to be opened for the fourth child when born.
2. MARRIED WOMEN—*Adverse possession—Case at bar.*—It appearing that the four children held jointly, adversary possession of the land until 1843, when the fourth child was under the disability of coverture and remained such till after 1881 : *held,* there could be no adversary possession against her in favor of her co-tenants during her coverture.
3. CHANCERY PRACTICE—*Answer—Case at bar.*—Code, section 3275, allows defendant to file his answer any time before final decree. In the case here, ten days after the rendition, by default, of a decree final *in form,* the defendants, during the same term, presented their answer to the bill, showing a probable title to the land in question ; but the court below refused to allow the answer to be filed solely on the ground that it " was presented too late."

HELD :
    The ruling was error.
4. CASES COMPARED.—*Gerst* v. *Jones,* 32 Gratt., 528, distinguished from the case here.

Argued at Wytheville.    Decided at Richmond.

Appeal from decree of hustings court of city of Roanoke, rendered September 26th, 1891, in a chancery suit wherein the North Roanoke Land and Improvement Company was complainant, and William L. Williamson, wife, children, and

others, and the appellants, Herbert D. Buford and Nugent Buford were defendants. Opinion states the case.

*G. W. & L. C. Hansbrough,* for appellants.

*Phlegar & Johnson,* for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

From the record in this cause it appears that, by deed of the 8th of September, 1810, one John Campbell and wife conveyed to one Robert Filson 175½ acres of land, composed of three parcels, and that, by deed of the 8th of October, 1810, the said Robert Filson and wife, in consideration of £1,000, conveyed the same three parcels of land, aggregating 175½ acres, to the "lawful heirs" of said John Campbell and Rebecca, his wife.

The said John Campbell and Rebecca, his wife, had, at the date of the said deed of October 8, 1810, three children—Robert, Clack R., and Susan; and, after the said date of October 8, 1810, Matilda, a fourth child, was born to them, the said John and Rebecca Campbell. The said Matilda married Daniel Stoner, and from her the appellants, Herbert D. C. Buford and Nugent Buford, are lineal descendants. There is no evidence of any *partition* having been made of these 175½ acres of land, and there is no record of any deed of partition vesting the title in severalty in any one in any part of these 175½ acres of land, though it is averred, *without proof,* that there was a deed of partition which had been lost and never recorded. Clack R. Campbell resided, from 1843 till his death in 1881, on a part of this undivided 175½ acres, and held exclusive possession and enjoyment of it and built upon it. It is said in the depositions that this part was defined by rock fences, though it is not proved that the said fences were put there by Clack R. Campbell, or after he went on it, or as line fences of this particular part.

Clack R. Campbell died in 1881, leaving a will by which he devised all of his realty to his wife, Lucy, for her life, with remainder after death to his niece, Nannie L. Williamson, for life, with remainder over, in fee, to the children of said Nannie L. Williamson.

On the part of which the said Clack R. Campbell resided there is " *Lot number* 6 "—the part which is the subject of the controversy in this case.   The aforesaid Mrs. Nannie L. Williamson had several children, the remainder men, in fee, under the will of Clack R. Campbell, and a suit was instituted in the circuit court of Roanoke for the sale of the realty to which the said children (then infants) were entitled in remainder, and this suit embraced "Lot number 6."   The record of that suit is not in the record in this cause, and whether the proceedings had were such as are requisite in the sale of infants' land does not appear.   The appellants charge that they were not.   Be that as it may, it seems that there was a decree for sale, and a sale made to M. P. Preston and his associates, who sold this " Lot number 6" to the appellee, the North Roanoke Land and Improvement Company, for $27,500, who, being advised that there was a cloud upon the title, brought this suit in chancery in the hustings court of Roanoke city to clear the title.

The Bufords, appellants, were made parties, but they lived in another county, one hundred miles away, and the bill was taken *pro confesso* as to them, and all the other parties defendant, the Williamsons only having answered the bill.

The hustings court of the city of Roanoke, on the 16th day of September, 1891, rendered a decree, final in form but not in operation, during the then current term of the court, in favor of the appellees affirming the title made to them by Preston and others, and derived from Clack R. Campbell, through the Williamsons.

The appellants—the Bufords—on the 26th day of September, 1891, during the same term of the hustings court, moved the court for leave to file their demurrer and answer, which

motion the court overruled and refused the leave. From this decree the Bufords appeal, assigning but one error—the refusal of the court to allow them to file their answer and make defence to the suit against them.

The answer was tendered, and the leave to file it asked for during the term of the court at which the decree of the 16th of September, 1891, was rendered, and it does not appear that the decree of the 16th of September, 1891, had been actually entered upon the chancery order book by the clerk, before the motion for leave to file the answer was made and refused by the court, upon the sole ground that it was "*too late.*" The affidavit of G. W. Hansbrough, who appeared for the Bufords, says that he had been employed by them only the day before—the 25th.

The answer tendered by the defendants—the Bufords—sets fort'1 such a defence as, if sustained, would have changed the decree rendered on the 16th of September during the same term, and set up a title to an undivided interest in "lot number 6," sold by the Williamsons to Preston and by Preston, &c., to the appellee. The answer asserts that, by the deed of October 8, 1810, from Filson, a title to an undivided share of the 175½ acres of land enured to *Matilda,* the daughter of John and Rebecca Campbell, born after the date and recordation of that deed, as well as to and equally with Robert, Clack R., and Susan—the sons and daughter of John and Rebecca Campbell—born before and living at the date of the said deed from Filson. That this undivided share of the said Matilda descended, in part, to the said Bufords, who are shown and admitted to be her lineal descendants. Also the shares of Robert Campbell and Susan Campbell (Thrasher), which they conveyed by deed of August 15, 1853, to Daniel Stoner, and by Stoner to Nefinger, trustee. That no partition of the said 175½ acres was ever made, and no allotment in severalty was ever made, among the joint or common owners; that the entire four, Robert, Susan, Clack R., and *Matilda* (their ances-

tress), did hold the said 175½ acres of land jointly, and that no ouster of Matilda was ever made, or is charged; that the relation of joint tenants between the said *four* has never been changed, nor the legal title in severalty has never vested in any one of the said *four* to any part of the said 175½ acres; that the statute of limitations is not applicable here, and is no bar to appellants' title.

The transaction of 1810 was an arrangement by John Campbell for the benefit of all the children who were, or who might be, born to him and his then wife Rebecca. It gave a fee, in remainder, to one undivided *third* to Robert, Susan, and Clack R., respectively, to be opened for Matilda when born. That the lawful heirs of John and Rebecca Campbell, his wife, meant their children who at their deaths should be ascertained to be their lawful heirs, and that all four—Robert, Susan, Clack R., and Matilda—were deemed to be entitled jointly, is admitted and averred in the bill, where it is alleged that "they, Robert, Susan, and Clack R., took possession of the (175½ acres) land, and that they, together with said Matilda, continued so to hold the same jointly, openly, adversely, notoriously, and exclusively, till 1843. This establishes the fact that the whole four had title and held the land jointly, in fee, until 1843; and there is nothing in the record to show any change in the joint character of their estate, or any vesting, in fee, in severalty, in any one of the four in any part of the said 175½ acres of land.

The entry upon and exclusive use and occupation of a part of the land by Clack R. Campbell, one of the tenants in common or joint owners of the undivided whole 175½ acres, did not destroy the joint character of the title, nor sever the part on which he so resided, from the joint estate of the whole 175½ acres.

The case presented in the answer of the defendants (Bufords) showed a state of things, which made it even probable that the respondents, Bufords, had title—a case to which the facts in

the record gave strong color—which had never been argued, and which the court could and should have given them time and opportunity to argue and to prove; yet the court below, in the very teeth of the Code of Virginia, 1887, section 3275, which commands that a defendant shall be allowed to file his answer at any time before final decree (whether entered or not), refused them the privilege of answering and making their defence.  See *Bean* v. *Simmons*, 9 Gratt., 371; *McVeigh* v. *Underwood*, 23 Gratt., 419.

This case is not within the rule of *Gerst* v. *Jones*, 32 Gratt., 528, and other cases cited, which decide that where there has been a trial and errors committed, in admitting or in rejecting evidence, or in giving or refusing instructions, and this court can see, from the whole evidence certified, that the party appealing could not have sustained prejudice by the ruling of the trial court, in such a case, this court will not set aside a verdict.   This is a case in which no trial was had and no decision pronounced, but the mere denial of a trial and the refusal of the trial court to receive and consider the answer of defendants solely on the ground alleged in the decree that "the answer was presented too late."   The bill itself charges that the four children (including Clack and *Matilda*) held jointly adversary possession of the land until 1843, and she is shown, by the record, to have been, at that time, a married woman under disability of coverture, and to have been alive in 1881, and, presumably, alive up to a much later period.   The denials of the answer, had it been admitted, would have overcome any and all presumptions that there had ever been any partition of the land and allotment in severalty.   The record shows that, in 1843, when Clack R. Campbell took possession of the lot in controversy, *Matilda* Stoner was under coverture as the wife of Daniel Stoner, and there is no evidence to show when her disability ceased, and Clack R. Campbell could not hold adversary possession against her.   No conveyance nor partitition of land will be presumed against a *feme covert*.   John

Campbell died in 1863, Rebecca, his wife, having pre-deceased him; and his heirs, at that event, were his said four children, of whom *Matilda*, the wife of Daniel Stoner, was one, and she, being a married woman, and remaining such, so far as this record shows, till her death, at some period subsequently to 1881.

The appellants, who were defendants below, were illegally and unjustly debarred, by the decree appealed from, from filing their answer and making their defence. The decree of September 26th must be annulled and reversed; the decree of September 16th suspended; and the cause sent back, with leave to the appellants to file their answer and be allowed time and opportunity to take evidence to support their defence.

DECREE REVERSED.