WILLIAM G. CRENSHAW President of the Atlantic
and Virginia Fertilizing Company *vs.* DANIEL W.
SLYE.

*Sufficiency of Instruction as to what must be found by the
Jury to constitute a Warranty—Objection not subject to
Review by the Appellate Court.*

In an action to recover on a promissory note, given for a certain ferti-
lizer, the Court instructed the jury as follows: 1st. "If the jury
find from the evidence in this case, that the note upon which
this suit is brought, was given for the fertilizer called 'Eureka,'
and that the said 'Eureka' was bought by the defendant upon
the representation of the plaintiff, or his agent, that said 'Eureka,'
was a valuable fertilizer; and shall also find that the said
'Eureka' so sold to the defendant, if they find it was so sold,
was valueless and worthless as a fertilizer, then the plaintiff is not·
entitled to recover." 2nd. "If the jury, however, find that the
said 'Eureka' so sold to the defendant, was a valuable fertilizer,
and possessed merit as such, then the plaintiff is entitled to recover."
On appeal by the plaintiff, it was HELD:

That the Court sufficiently instructed the jury as to what they must
find to constitute a warranty.

An objection as to the time of the production of evidence will not
be reviewed on appeal.

APPEAL from the Circuit Court for St. Mary's County.

The nature of the case is stated in the opinion of the
Court.

*First Exception.*—The defendant offered certain testi-
mony, to the admissibility of which, at the time of the
offer of the same, the plaintiff objected, but the Court
(BRENT, C. J. and FORD, J.) overruled the objection, and
permitted such testimony to go to the jury; the plaintiff
excepted.

*Second Exception.*—The defendant offered the following prayer:

If the jury find from the evidence in this case, that the defendant received no benefit from the fertilizer, for which the note filed in this case was given, they must find for the defendant; provided they further find, that said fertilizer was properly applied and used.

And the plaintiff prayed the Court to instruct the jury as follows:

First. That if the jury find from all the evidence in this case, that the note in controversy was given to the plaintiff by the defendant in settlement for $2\frac{1}{2}$ tons of fertilizer, called "Eureka," sold and delivered to the defendant at his request, by the plaintiff or his agent, and that the fertilizer so sold to the defendant, contained—

Soluble and precipitated phosphoric acid, 6 to 11 pr. ct.
Insoluble phosphoric acid.................... 4 to 6 "
Organic matter.......... .... ............... 20 to 35 "
And yielding ammonia.. .................... 2 to 4 "

which was that which the plaintiff or his agent represented the said fertilizer to contain, that then the jury must find for the plaintiff, although they may further find from the evidence, that the defendant did not get beneficial and satisfactory results from the application of said fertilizer to his land.

Second. That the burden of proof is upon the defendant, to show to the jury that the fertilizer sold and delivered to him did not contain the constituent elements or ingredients mentioned and described in the plaintiff's first prayer.

But the Court refused to give the instructions asked, and instructed the jury as follows:

1st. If the jury find from the evidence in this case, that the note upon which this suit is brought, was given for the fertilizer called "Eureka," and that the said "Eureka" was bought by the defendant upon the repre-

sentation of the plaintiff, or his agent, that said " Eureka" was a valuable fertilizer; and shall also find that the said " Eureka " so sold to the defendant, if they find it was so sold, was valueless and worthless as a fertilizer, then the plaintiff is not entitled to recover.

2nd.   If the jury, however, find that the said " Eureka" so sold to the defendant, was a valuable fertilizer, and possessed merit as such, then the plaintiff is entitled to recover.

. To the refusal of the Court to grant the prayers of the plaintiff, and to the instructions given, the plaintiff excepted.   The verdict being for the defendant, the plaintiff appealed.

The cause was argued for the appellant before BARTOL, C. J., BOWIE, MILLER, ROBINSON and IRVING, J.

*Arthur W. Machen,* for the appellant.

There was error in the refusal of the plaintiff's prayers, and in the instructions given.

The proposition of the plaintiff's first prayer, that, if the ingredients of the fertilizer were as represented, the fact that the defendant's use of it may not have proved beneficial to him constituted no defence, cannot, be successfully disputed, and, while the Court refused the prayer, the instructions given did not afford the plaintiff the benefit of it.

It was incumbent on the defendant, in order to meet the presumption arising from the promissory note, to show affirmatively a want of consideration, by proving that the Eureka in question did not contain the ingredients or constituent elements the brand on the bags represented them as containing; and consequently the plaintiff's second prayer, as to such burden of proof, should have been granted.

The actual instructions were erroneous, and tended to mislead the jury.   The record shows that the representa-

tions referred to in the first instruction were representations made by the plaintiff's agent, not to the defendant, nor for the purpose of being communicated to the defendant, but to a previous customer, a certain Mr. Hancock, who received them from the agent in the year 1876, and, whether influenced by them or not, bought the fertilizer in that year, and used it with great benefit. Hancock imparted the information of his experience, as well as of the commendations of the agent, and so it was, it appears, that the defendant also, without himself ever seeing the agent, became a purchaser in 1877, through the instrumentality of the same neighbor, Hancock, whom he authorized to procure the Eureka for him. Therefore, when the jury were told that, if they found that the Eureka was bought by the defendant upon the representation of the plaintiff's agent that the Eureka was a valuable fertilizer, they might find in that the basis of a defence, they were directly authorized to find for the defend-. ant because of his having acted upon representations which were not made to him at all, nor intended for him, but which came to him indirectly and by hearsay. Now, independently of all consideration of the character of the representations themselves, it was error to direct the jury to hold the plaintiff responsible for what his agent thus said in 1876 *to a third party.*

It is a well-established principle of law that preliminary representations, whatever effect they may be supposed to have in inducing the succeeding contract, do not (in the absence of fraud,) bind the party making them. It is not enough that the article "was bought upon the representation;" it is further necessary that, by the intention of the parties, the representation is continued into the contract, and made an integral part of it. *Benjamin on Sales, sec.* 567, *p.* 497; *Humphreys vs. Comline,* 8 *Blackf.,* 516.

Even where the word "warranty," is used in an oral representation, it is a question to be submitted to the jury

---

Crenshaw *vs.* Slye.

---

whether a warranty was intended, or only an expression of opinion or high commendation. *Starnes vs. Erwin*, 10 *Ired., N. C.*, 226.

The instruction, therefore, in omitting this essential element, and failing to require the jury to find that the representation was a part of the contract, was erroneous and cannot be supported.

In point of fact the representations in question could not have been intended to be part of the contract with the defendant, having been made altogether without reference to him, and to a different party, and in a previous year.

The important point is also involved in the case, whether a representation by an agent, (even if made to the party,) that a well known fertilizer is a *valuable* fertilizer, is such a representation as justifies the purchaser in refusing to pay for it, if, upon trial, the results indicate that it was without value as a fertilizer, the article itself being just what it appeared and was represented to be—that is of the composition, and containing the ingredients, stated. Is that such a representation as, upon the best authorities, is to be treated as equivalent to a warranty?

*Simplex commendatio non obligat*, is a maxim of the English law. The worth of a thing is matter of opinion, and in matters of opinion, each party must stand and act independently of the other. All commerce is founded on the recognition of this doctrine. *Wentwork vs. Dows*, 117 *Mass.*, 16; *Weimer vs. Clement*, 37 *Penn.*, 147; *Whittaker vs. Eastwick*, 75 *Penn.*, 232; *Fraley vs. Bispham*, 10 *Barr*, 320; *Eagan vs. Call*, 34 *Penn.*, 236; *Prideaux vs. Bunnett*, 1 *C. B. N. S.*, 613, (87 *Eng. C. L.*;) *Ollivant vs. Bayley*, 5 *Q. B.*, 288, (48 *Eng. C. L.*;) *Chanter vs. Hopkins*, 4 *M. & W.*, 399; *Welsh vs. Carter*, 1 *Wend.*, 185; *Bryant vs. Pember*, 45 *Verm.*, 487; *Knox vs. Exchange Bank*, 13 *Wall.*, 383.

If a representation that a fertilizer is valuable is to be understood as a representation that it will produce bene-

ficial effects, the cardinal distinction between promissory statements and statements of existing facts, applies—a distinction illustrated in a recent case of great authority in the Supreme Court of the United States. *Sawyer vs. Prickett,* 19 *Wall.,* 160.

The doctrine of *caveat emptor,* in its particular application to sales of fertilizers, was thoroughly considered by the Court of Appeals of Virginia, in the case of *Mason vs. Chappell,* and upon that decision, and the very clear and able opinion delivered by ROBERTSON, J., we rely as fully covering the present case. 15 *Grattan,* 572.

In Maryland, the doctrine has been ever maintained with inflexible rigor. *Rice vs. Forsyth,* 41 *Md.,* 389 ; *Hyatt vs. Boyle,* 5 *G. & J.,* 110 ; *Gunther and Rodenwald, vs. Atwell,* 19 *Md.,* 157.

No appearance for the appellee.

IRVING, J., delivered the opinion of the Court.

The suit, in which this appeal was taken, was instituted upon a promissory note of the appellee to the appellants, for one hundred and twenty-three dollars. The *narr.* contained the ordinary money counts, with a special count setting out the promissory note. The appellee pleaded *non assumpsit,* and under the general issue proved that the note was given for two and one-half tons of a fertilizer called "Eureka," of which the plaintiffs were manufacturers, and offered evidence tending to prove certain representations at the time of the sale, respecting the value of the fertilizer, which were claimed to amount to a warranty, and upon which the appellee relied in the purchase.

The main question is, did the Court, in the instructions given the jury, in lieu of the instructions asked by the respective parties, correctly instruct the jury as to what they must find to entitle the appellants to recover? In other words, were the elements of evidence necessary to

make a warranty from representations sufficiently stated in the instructions. No question of the admissibility of evidence under the pleadings, or of its legal sufficiency to support the instructions is before us under the record.

The rule of law is, that any affirmation of the quality of the article, made at the time of the sale, intended as an assurance of the fact stated, and relied on and acted on by the purchaser, will constitute an express warranty. This rule all the authorities lay down, and it is not thought necessary to make special citations. Whether such representations were made with the intention of securing a sale, and were relied on by the purchaser, is for the jury, to be inferred from the nature of the sale and the circumstances of the particular case. *Benjamin on Sales,* 409 and 500. The simple question is, then, did the Court sufficiently instruct the jury as to what they must find to constitute a warranty? By the first instruction the Court said " If the jury find from the evidence in this case, that the note, upon which this suit was brought, was given *for* the *fertilizer* called " Eureka," and that the said " Eureka" *was bought upon the representation* of the plaintiff or his agent, that said " Eureka," was a valuable fertilizer; and shall also find that the said " Eureka," so sold to the defendant, if they find it was so sold, was valueless and worthless as a fertilizer, then the plaintiff is not entitled to recover." This Court does not think this instruction asserts that bare commendation is a warranty; but think it sufficiently instructs the jury on the matter of their inquiry. It requires them to find that the note was given " upon " the representations made. That the representations were the procuring means of securing the appellee's name to the note. It does not simply say, that if the note were given for the fertilizer and that certain representations were made, they must find for the defendant; but it states that the note must be found to have been given " *upon* " such representations, which is the same thing as

saying in consequence of them. If that were so, and the jury found that the representations were untrue, and that the "Eureka" was utterly valueless as stated in the instruction, the appellee was entitled to the verdict as the jury were instructed. We do not think that the jury could reasonably misunderstand the instruction as given; and we think that it did sufficiently instruct them. If the first instruction given by the Court was justified by the proof, and we must assume that it was, then the prayers of the plaintiff were correctly rejected, because they ignored entirely the representations of the plaintiff respecting the value and virtue of the fertilizer. The second instruction given by the Court being the converse of the first was properly given.

As to the question of evidence which was excepted to, it would seem that no objection was taken to its admissibility as evidence, but only as to the time of its production. That being wholly within the discretion of the Court, we cannot review it.

*Judgment affirmed with costs.*

(Decided 20th June, 1879.)