## Richmond.

HERRON & HOLLAND v. DIBRELL BROS.

January 8th, 1891.

1. SALE—*Warranty—Evidence.*—The jury is justifiable in finding that to-
bacco was warranted by seller by evidence that seller represented to
buyer that " it was sound " and " redried," and " would certainly keep."
2. IDEM—*Case at bar.*—D. purchased of H. & H. twenty one hogsheads of
tobacco, seventeen of which proved unsound. Evidence to prove that
two other hogsheads from the same lot were sound : *held*, inadmissible.
3. IDEM—*Instructions.*—Instruction that if the jury find that the tobaccos
were falsely represented to be " reordered and redried," and that those
terms import to the trade that the tobaccos are sound and in keeping
condition, and that buyer bought relying on these representations,
then they must find for the plaintiff: *held*, proper.

Error to judgment of corporation court of Danville, ren-
dered January 22d, 1889, in an action of trespass on the case
in *assumpsit*, wherein R. L. Dibrell and A. Dibrell, partners as
Dibrell Bros., are plaintiffs, and M. F. Herron and W. W.
Holland, partners as Herron & Holland, are defendants. The
judgment being adverse to the latter firm, they brought the
case here on writ of error. Opinion states the case.

*Green & Miller, A. J. Montague* and *W. W. & B. T. Crump,*
for the plaintiffs in error.

*Peatross & Harris, Guy & Gilliam,* for the defendants in
error.

·FAUNTLEROY, J., delivered the opinion of the court.

This suit is in the form of trespass on the case in *assumpsit*, to recover damages for breach of contract. The declaration alleges, that on the 4th day of February, 1888, Dibrell Brothers, who were engaged in the tobacco trade in Danville, Virginia, entered into negotiation with Herron & Holland, who were also dealers in tobacco in the same town, for the purchase, by the said Dibrell Brothers, from the said Herron & Holland, of twenty-one hogsheads of leaf tobacco, at the rate of ten cents per pound, for the aggregate sum of $2,445.80, that the said Herron & Holland then and there, when the said sale was under treaty, undertook, and then and there promised the said plaintiffs that the said lot of tobacco, consisting of 24,458 pounds, packed and contained in the twenty-one hogsheads as aforesaid, had been thoroughly redried, was sound, and in good keeping order; and that, upon the faith of these representations then and there so made, they, the plaintiffs, bought the said tobacco, and paid to the defendants the price aforesaid, to-wit, the sum of $2,445.80; that the said lot of tobacco, at the time of the making of the said promises and undertakings of the said defendants, had not been thoroughly redried, was not sound, and was not in good keeping order, but, on the contrary thereof, was at that time unsound, had not been thoroughly redried, and was not in good keeping order, whereby and by reason of which said false representations the said lot of tobacco became, and was of no use or value to the said plaintiffs, who have been put to great charges, trouble and expense, in and about the keeping, taking care of, handling and preserving the said tobacco, to their injury and damage to the amount of $1,000.

In the month of May, 1888, the tobacco which was in hogsheads, into which it had been prized and packed by the defendants, was opened; when it was found that seventeen hogs-

heads of the said tobacco were unsound ; some were "hot and mouldy," some were "cool, but funked," some were "hot and funked," and the tobacco in all the seventeen hogsheads was, more or less, injured.    It was shown, to the satisfaction of the jury, that the representations, upon the faith of which the tobacco had been sold by the defendants and bought by the plaintiffs, were untrue; and the jury brought in a verdict in favor of the plaintiffs for the sum of $691.73 damages.  Whereupon the defendants moved the court to set aside the verdict aforesaid, and grant to them a new trial upon the ground that the said verdict is contrary to the law and the evidence, which said motion the court overruled, and entered judgment according to the verdict.    The main question brought to this court, by the errors assigned in the petition of the plaintiff in error, is whether the jury could reasonably have found the verdict they did find, upon the evidence before them ?    And the determination of this question requires an examination of that evidence as it has been certified by the court in the bills of exception in the record.

The appellants or plaintiffs in error, are in the position of demurrants to the evidence, and they are regarded as waiving all their evidence in conflict with the evidence of Dibrell Brothers, and as admitting the evidence for Dibrell Brothers, and all reasonable inferences therefrom, and as being entitled to only such evidence in their own behalf as is not in conflict with that for Dibrell Brothers, and such inferences as necessarily flow therefrom.    The testimony of Dibrell, the purchaser, says, that hearing that the defendants, who were dealers in leaf tobacco on the Danville market, had leaf tobacco for sale, he went to their factory and examined some four hogsheads, which were open and exposed by their heads being taken out; that there were twenty-one hogsheads in all; that the vendor said the quality of the tobacco in all the hogsheads was the same; that he told Herron, the vendor, that he wished to keep the tobacco for some time, and wished it sound ; that

he, the vendor, further said, that the said tobacco had been re-dried and was sound; that he, relying on the representations of Herron (the vendor), purchased it; that he would not have purchased it at all but for such representations of Herron. Herron admits that he did warrant the tobacco to be sound, and in the petition of the plaintiffs in error, it is stated as a *fact* proved in the record, he "(Herron) did not warrant anything but the soundness of the tobaccos." The evidence of numerous expert witnesses is, that if the tobacco had been thoroughly redried, and was sound when it was packed, it could not have been found in bad order, damaged and unsound as it was when opened. McDearman, a witness who was present at the negotiation and sale of the tobacco (not as a mere bystander, but with Dibrell, the purchaser, having gone there with him and Terry for the purpose) testifies that Herron, the vendor, said to Dibrell, the purchaser, that the tobacco had been thoroughly redried, was in good order, and he could keep it; that the tobacco was bought on these representations of Herron above stated, and would not have been bought but for such representations. Terry, who was present when the sale was made, testifies that Herron said he was not anxious to sell; that the tobaccos were thoroughly redried, and he knew they would keep. The witness, McDearman said, that about one month before the tobacco was opened and inspected on the 31st of May, 1888, he got out a bundle from one of the packages, and reported that the bundle was mouldy; that if it had been sound when packed, it would not have been in that condition; that he had been in the tobacco business in Danville all his life, and that tobacco redried would keep through a sweat; that redried tobacco meant, in the Danville trade, tobacco that had been redried and put in keeping condition. The witness, Dibrell, further testifies that immediately after the purchase, the tobacco was moved to, and stored on the second floor of a factory as good, if not better, than any other storage factory in Danville, and that said floor was ab-

solutely dry; that on the 31st of May, 1888, he inspected the tobaccos, and found them in bad order and in unsound condition; he then, with the consent of Herron, the vendor, moved the said tobaccos to another factory, where they were inspected, Herron being present by E. G. Moseley and C. C. Dula and R. A. Bendall, whose report of which inspection, signed by them, witness exhibited and proved, showing the damaged condition of the tobacco in seventeen of the twenty-one hogsheads, and the extent of the damage in each. He further testified that if the tobacco had been in the condition represented to him by Herron, the vendor, there would have been no unsoundness about them at the time of the said inspection, and that he would not have purchased them at all but for such representations made by Herron. Witness exhibited and proved the account filed with plaintiffs' declaration, showing their claim for damages by items. He said on cross-examination, that the four hogsheads which were open for inspection were sound, and that Herron guaranteed to him that the tobaccos in the other hogsheads was like that in the four hogsheads exhibited; that Dibrell Brothers had an order for the tobaccos, and were very particular about their keeping, and that he told Herron he wanted the tobacco in such condition that it would keep, and that Herron, though he did not use the word *warranted*, said that it would keep.

The witness, W. N. Shelton, said he had been forty years in the tobacco trade in Danville, and that "redried" tobacco would keep. The witness, J. A. Craddock, testified that "redried" tobacco meant, to the trade in Danville, tobacco that will keep; that he was in the trade and knew what redried tobacco meant in the trade, and that redried tobacco will keep. That if tobacco was opened in May, which had been packed in February, and found to be cool and funked, it would indicate that it was damaged when packed. C. C. Dula testified that the term "redried" meant that the tobacco would keep; that he was in the trade and knew what redried tobacco meant

in the trade, and that he agreed with Craddock as to the order of the tobacco when packed. He was one of the inspectors of the tobacco on the 31st May, 1888, and proved the statement of results of the inspection heretofore exhibited and proved by the witness, R. L. Dibrell.

E. G. Moseley testified that he had been in the tobacco trade for seventeen years, and knew what "redried" tobacco meant; that "redried" tobacco has a distinct meaning in the trade, and means tobacco that has been put in good keeping order, and that tobacco redried will keep; an assurance that tobacco was redried was, in itself, a guaranty that it would keep, as he understood it to mean in the trade; that if tobacco is found cold and funked when opened, it was packed funked. That he was one of the inspectors on the 31st of May, 1888, and the statement of the result of said inspection exhibited and proved by R. L. Dibrell he also proved. He said that thoroughly "redried" and "re-ordered" means the same thing.

Bendal testified that he was one of the inspectors of the tobacco on the 31st of May, 1888, and that the statement exhibited by R. L. Dibrell of the results of such inspection, signed by himself, C. C. Dula and E. G. Moseley, was correct.

These witnesses prove the representations made by the vendors as an inducement to the purchasers to buy; they were emphatic and unqualified affirmations of *facts* peculiarly and solely within the knowledge of the vendors; and they were made all the more impressive as assurances to the purchasers by the vendors. Herron's artful declarations that "he was not anxious to sell," that "he didn't care whether he sold said tobacco or not," "he knew they would keep"—declarations which were proved to be wholly untrue by Holland, the other partner of the concern, who was not present when the sale was made. He testified that they, the defendants, "were anxious to sell, because they had dissolved their partnership, and were going to sell the tobacco at some price before May, because he wanted the money, but he could not have guaran-

teed them to keep." Now, to these unqualified, false representations made by Herron, the vendor, to the vendees at the time of the sale as an inducement to them to buy the tobacco, emphasized by ostentation of a cunning pretence of indifference about desiring to sell at all, because he knew that the tobacco would keep by reason of its having been thoroughly "redried," let us apply the plain and settled principles of the law pertinent to the case. In *Lowe* v. *Trundle*, 78 Va., 67, Judge Hinton says, quoting Kerr on Fraud and Mistake, Sec. 2d: "If a man represents as true that which he knows to be · false, and makes the representation in such a way, or under such circumstances, as to induce a reasonable man to believe that it is true, and is meant to be acted on, and the person, to whom the representation has been made, believing it to be true, acts upon the faith of it, and by so acting sustains damage, there is fraud to support an action of deceit at law, and to be a ground for the rescission of the transaction in equity."

In *Guin* v. *Byrd*, 32 Gratt., 300, Judge Staples, delivering the opinion of this court, said: "The doctrine is believed to be well established in the United States that a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had the right to rely, is a ground for a rescission by a court of equity, although the party making the representation was ignorant whether it was true or false; and the real inquiry is, not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true, and was misled by it in entering into the contract. For, in such case, whether the false representation was innocently made, or knowingly made, the effect is the same upon the purchaser." In the case of *Alexander* v. *Sanders*, 9th Va. L. Journal, p. 97, Judge Hinton, for this court, quotes and approves the language and the law expressed in *Guin* v. *Byrd*, *supra*.

In Parsons on Contracts, 579–80, it is said: "Any distinct assertion or affirmation of quality made by the owner, during

a negotiation, for the sale of a chattel, which it may be supposed was induced to cause the sale, and was operative in causing it, will be regarded either as implying or constituting a warranty. If such affirmation was made in good faith, it is still a warranty; and if made with a knowledge of its falsity, it is a warranty and it is also a fraud. It is certain, that the *word 'warranty'* need not be used, nor any other of precisely the same meaning. It is enough, if the words actually used import an undertaking on the part of the owner that the chattel is what it is represented to be, or an equivalent to such undertaking.". " An affirmation of quality by the seller at the time of the sale, intended as an assurance of fact, and relied on by the buyer, constitutes a warranty." " No special form of words is necessary to create a warranty." • (Benjamin on Sales, Vol. 2, p. 811–12, and note and cases there cited).

" It is enough, if the words used import an engagement on the part of the vendor that the article is what he represents it to be. Any distinct affirmation of quality, made by the vendors at the time of the sale, not as an expression of opinion or belief, but as an assurance to the purchaser of the truth of the fact affirmed, and an inducement to him to make the purchase, is, if accordingly received and relied on and acted upon by the purchaser, an express warranty." (*Mason* v. *Chappell*, 15 Gratt., 582–3.) " The general rule is, that whatever a person represents at the time of a sale is a warranty." (*Wood* v. *Smith*, 4th C. and P., 45, 19 Ed., C. L., 267). In the case of *Wood* v. *Smith*, *supra*, the affirmation or representation made by the seller of a mare, was held to be a warranty, although the seller expressly refused to warrant, saying, in reply to the question by the buyer, " Will you warrant her? " " I never warrant; I would not even warrant myself." The form in which representations by the vendor are made, and the words in which they are expressed, are, comparatively, unimportant. The true question is, always, the effect and intention of the statements made by the vendor; and this (except when writ-

ings are to be construed) is a question for a jury. Benjamin
on Sales, 813, says, that, whether the statements or represen-
tations made, is a warranty, "is a question of fact for the jury,
to be inferred from the nature of the sale and the circumstan-
ces of the particular case." And in note seven, on the same
page, many cases are cited to sustain the proposition, that
"where the language is equivocal, the intention to warrant, is
a question for the jury." In *Crenshaw* v. *Slye*, 52 Md., 146,
the court says: "The rule of law is, that any affirmation of
the quality of the article, made at the time of the sale, intended
as an assurance of the fact stated, and relied on and acted on
by the purchaser, will constitute an express warranty. Whether
such representations were made with the intention of securing
a purchaser, is for the jury, to be inferred from the nature of
the sale and the circumstances of the particular case."

In the case under review, the jury passed upon the contract,
and found that there was a warranty; and we are clearly of
opinion, that the verdict is fully justified by the evidence be-
fore them, and the law applicable to the case; and the result
is in happy harmony with the truth and the natural justice of
the transaction between the parties. Under the proofs and
pleadings in the cause, the jury would not have been war-
ranted in finding any other verdict.

The plaintiffs in error offered, in the court below, where they
were defendants, to show that *two* hogsheads of tobacco from
the same lot from which the plaintiffs made their purchase of
twenty one hogsheads, were sold to other parties, and that the
tobacco in both of these two hogsheads, when opened, was
found to be sound; and the court excluded the testimony. If
the object was to rebut the full proof already in the cause,
that the tobacco in *seventeen* out of the twenty-one hogsheads
sold to the plaintiffs, and warranted to contain sound tobacco,
was unsound and damaged, the evidence was wholly irrele-
vant, for it had been proved by the direct testimony of those
who examined the tobacco, that the tobacco in seventeen of the

twenty-one hogsheads. was unsound, and badly damaged at the time it was sold to the plaintiffs. In fact, of the twenty-one hogsheads sold to the plaintiffs, *four* had proved to contain sound tobacco, yet that circumstance did not, in any way or degree, show that the tobacco in the *seventeen* hogsheads, which had been found unsound and damaged, "was sound" when they sold it, had been "thoroughly redried," and in such condition that it "would keep," as was represented by the vendors to the vendees to be the facts, to induce them to buy, and upon faith of which affirmations they did act and buy. At most, it could only prove that they had not imposed unsound and damaged tobacco upon the purchasers of the *two* hogsheads, as they succeeded in doing by false representations, upon the purchasers of the seventeen hogsheads. The court did not err in excluding this irrelevant and unfair testimony, which could have had no other effect than to draw the jury away from the issue they were sworn to try.

The plaintiffs in error assign as error, the giving by the court of the following instruction: "If the jury believe from the evidence, that the defendants, or either of them, represented that the tobaccos they sold had been reordered or redried, and that that term in the tobacco trade in Danville imports that tobacco so redried was in a keeping condition at the time, and that the plaintiffs, relying upon the assurance that it had been redried, purchased it; and that the tobacco had not, in fact, been redried, according to the import of that term as applied in the trade, and the plaintiffs were damaged in consequence of it, they must find for the plaintiffs."

This instruction is right, and is warranted by the proof in the cause. It does.not, as contended by the plaintiffs in error, direct the jury to attach to the terms, "reordered" or "redried," the force of a warranty, or that they, or either of them, was equivalent to a warranty. The vendors represented to the vendees, (in reply to the expressed solicitude and requirement of the sale, that the tobacco should be sound and in keeping

condition). that they had been "thoroughly redried" and "would keep;" and, moreover, that they were indifferent about selling the tobacco, as they knew, from the treatment which they had given to it when they packed it, that it would keep, and the proof was, that all these assurances and affirmations of facts, peculiarly within their knowledge, and relied on by the purchasers, *were untrue;* and all that the instruction does, is to say to the jury that, if they believe from the evidence that they were untrue, and that the plaintiffs were injured thereby, they were entitled to damages according to the proofs.

There is no error in the judgment complained of, and the judgment of this court is to affirm it.

JUDGMENT AFFIRMED.