# Richmond

## E. Carr Smith, Et Al., Individually and Trading, Etc. v. C. T. Hensley, Individually and Trading, Etc.

April 24, 1961.

Record No. 5215.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Wayne Lustig* (*Gordon E. Campbell; Gorin F. Hatchett*, on brief), for the plaintiffs in error.

*Thomas H. Wilson, II* (*Wilson and Wilson*, on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

This proceeding was instituted by C. T. Hensley, individually and trading as Cool Roof of the Peninsula, the appellee herein, against E. Carr Smith, Henry T. Smith and Richard W. Smith, individually and trading as E. Carr Smith and Sons and Cool Roof of Virginia, the appellants herein, to recover damages alleged to have been sustained as the result of the breach of an implied warranty in the sale to him of an "inferior and not of marketable quality" roofing material which, when applied by him to the roofs of his customers' buildings, proved unsatisfactory and caused him to suffer judgments on actions brought against him and harm to his reputation. A jury returned a verdict for the appellee in the amount of $7,800, and the court entered judgment thereon. From this judgment we granted a writ of error.

The appellants contend (1) that the evidence did not establish that there was an implied warranty of the roofing product; (2) that the appellee had executed a release which barred his right to bring this action; (3) that the court erred in granting appellee's instruction No. 3; and (4) that the damages allowed were not supported by the evidence.

No evidence was offered on behalf of the appellant and the material facts, which are not in dispute, may be summarized as follows:

In May, 1957, the appellants, who were distributors of Cool Roof products in this State, authorized the appellee to act as a franchise dealer in Cool Roof products in the area comprising the cities of Hampton, Newport News and Warwick, and the counties of York and James City. The principal Cool Roof product, known as "Stay Cool," was usually sprayed on roofs of buildings and it formed a white coating designed to serve as insulation against the sun's rays. The product was prepared for use on all kinds of roofs, and the material to be used varied in its composition according to the type of roof on which it was to be applied.

The appellee had had some experience in applying the product and he received additional training from the appellants and the manufacturer. Under the dealership agreement all the materials and necessary equipment used in the operation of the appellee's business were purchased by the appellee from the appellants. The product was sold to the appellee as a concentrate, and to this he added lime and water in the proportions directed by the manufacturer. When ordering the Stay Cool product the appellee used his own judgment in designating the type of material required for each roof and he did not rely on the judgment or skill of the appellants.

The appellee, after properly mixing the Stay Cool product, applied it to the roofs of thirty buildings in a proper workmanlike manner and in accordance with methods learned from his training and the directions on the product containers. He was paid by his customers a total of $5,380 for the materials furnished and the work performed.

Shortly after applying the product on the roofs of the buildings the coatings on most of the roofs began to discolor, crack and flake off. As a result of this, three of the appellee's customers obtained judgments against him for a total of $892.50, including costs, and he settled a fourth claim for $300. No other actions were brought against him and most of his customers never complained.

A representative of the manufacturer testified in this case that they had discovered that their directions for mixing the concentrate called for the use of too much lime, and that they sent material to the appellants to replace any defective jobs resulting therefrom. He also testified that the manufacturer guaranteed to the distributor and the dealer that the product would stay on roofs for five years.

The appellee went out of business in September, 1957, and at that time he was indebted to the appellants in the approximate amount of $4,000 for materials and equipment purchased. To secure this indebtedness the appellee signed a demand note and executed a second mortgage on real estate in North Carolina in which he claimed to have an equity of approximately $6,000. For the purpose of settling the indebtedness, the appellee authorized the appellants to sell the property secured by the mortgage (which the appellants purchased for $1,000, subject to the first mortgage), returned to the appellants a truck and other equipment and material purchased from them, and gave the appellants a check for $1,000, on which appeared the notation that it was "In full settlement, notes secured by deed of trust, Cool Roof matters, and all other differences."

The appellants contend, in support of their first assignment of error, that the evidence shows that the appellee did not rely upon the judgment and skill of the appellants that the Stay Cool products were suitable for the purposes intended and that such reliance is essential to imply a warranty of fitness of the product for a particular purpose. They cite *H. M. Gleason & Co.* v. *International Harvester Co.*, 197 Va. 255, 261, 88 S. E. 2d 904, 908; *Herron & Holland* v. *Dibrell Bros.*, 87 Va. 289, 296, 12 S. E. 674, 676, 677; *Universal Motor Co.* v. *Snow*, 149 Va. 690, 699, 140 S. E. 653, 655, 59 A. L. R. 1174; *Gerst* v. *Jones & Co.*, 73 Va. (32 Gratt.) 518, 521, 34 Am. Rep. 773.

The appellee concedes that the evidence shows that he did not rely on the judgment and skill of the appellants when he ordered the product. He says, however, that the rule relied on by the appellants is not controlling in this case, since it applies where the buyer intends to use an article for a *specific* purpose and relies on the judgment and skill of the seller that the article will serve the purpose for which it is intended. He contends that the principle applicable under the evidence in this case is that when an article is purchased by its trade or brand name, an implied warranty of merchantability or fitness of use arises whether or not the buyer relies on the judgment of the seller. We agree with the contentions of the appellee.

The principle is stated in 46 Am. Jur., Sales, § 344, pp. 527-528, as follows:

"*Goods Sold under Exact Description or under Patent or Trade Name.*—While there is some authority to the contrary, the view expressed in the great majority of the cases passing on the point is that

in a sale of an article under an exact description or under its patent or other trade name, there is a warranty of merchantability or of fitness for the ordinary or general purposes of goods so described, and the fact that an article is sold under an exact description or under its patent or other trade name does not preclude such a warranty at common law or under Uniform Sales Act, which provides for such a warranty upon a sale by description by a seller dealing in goods of that description, although in a subsequent clause it is provided that 'in case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.' In other words, an implied warranty of merchantability is not excluded by such subsequent clause. These rules apply to a sale under a trade term which by use has become generic." See Annotation in 59 A.L.R., p. 1224 et seq., and the many cases there cited. Also 46 Am. Jur., Sales, § 351, pp. 535-536.

In the present case a contractual relationship existed between the parties for the sale and use of Cool Roof products and the Stay Cool material had but *one* general purpose, namely, to be used as a roof coating. The appellee ordered the product from the appellants by its trade name, and there was an implied warranty of merchantability or fitness of the product for the ordinary or general purposes for which it was sold.

■ There is no merit in the appellants' contention that the notation on the $1,000 check barred the appellee's right as a matter of law to bring this suit. The undisputed evidence shows that the check was given to the appellants pursuant to an agreement between the parties to settle the appellee's indebtedness, and that the notation made on the check was for the purpose of relieving him of the duty to adjust future complaints arising out of the sale and application of the Stay Cool product. The settlement agreement brought to an end the dealership arrangement between the parties and all materials and equipment on hand were returned to the appellant. The evidence shows that it was not within the contemplation and intention of the parties that the notation on the check was to relieve the appellant from liability arising out of the sale to him of the Cool Roof products. For a release to be final and complete it must have been so intended by the parties. The evidence presented a factual situation for determination by the jury. See *Mercury Ins. Co. v. Griffith*, 178 Va. 9, 20, 16 S. E. 2d 312, 316.

■ The appellants contend that paragraphs numbered 1 and 3 of instruction No. 3, dealing with the assessment of damages, given at the request of the appellee, were erroneous.

Paragraph No. 1 of the instruction told the jury that in assessing damages they might consider the cost of the Stay Cool product to the appellee. This was incorrect since the entire amount of product purchased and applied by the appellee was not shown under the evidence to be bad, and the appellants were entitled to an instruction which allowed the jury to consider the value of the goods received. The proper measure of damages in this case is not the cost of the goods but the difference between the value of the article furnished the buyer and the value the article would have if it had answered to the warranty. *Southern Tire Sales Corp.* v. *A. M. Dudley & Co.*, 138 Va. 582, 585, 587, 121 S. E. 885, 887.

■ Paragraph No. 1 is incorrect in another particular. The evidence shows that the appellee collected approximately $5,380 from the jobs on which he applied the Stay Cool product, and to allow him to recover the cost of the materials and not account for his profits made by the use of the materials would result in a double recovery in his favor. See *Economic Water Heating Corp.* v. *Dillon Supply Co.*, 156 Va. 597, 608, 159 S. E. 78, 80; *Coleman* v. *Sowders*, 206 Ky. 841, 268 S. W. 579, 581.

■ Paragraph No. 3 is incorrect. It told the jury that it could allow damages for any "loss of time while he [the appellee] was actually engaged in the business as an active dealer of Cool Roof Products." There is no proof in the record to show the value of any time the appellee lost on account of the failure of the Stay Cool product, and such was purely speculative. Other language in the paragraph permitted the jury to consider as an element of damages the alleged loss suffered by the appellee from the foreclosure sale of his North Carolina property. As between a seller and a buyer, the damages recoverable on a breach of warranty are those which are the direct and natural result caused by the breach. There is nothing in the record to indicate that the appellee's inability to pay the $4,000 mortgage note arose out of the breach of the warranty of the Stay Cool product. Such a loss was too remote and speculative to be considered as an element of damages in this case.

■ The giving of instruction No. 3 was error, but since the appellee is entitled to recover damages resulting from the breach of the implied warranty, and we can find from the evidence the exact

amount he is entitled to recover, we shall here modify the judgment of the lower court and affirm that part of the judgment which is supported by the evidence. See *United Constr. Wkrs.* v. *Laburnum*, 194 Va. 872, 900, 75 S. E. 2d 694, 712, affirmed 347 U. S. 656, 74 S. Ct. 833, 98 L. ed. 1025.

From a careful reading of the evidence we find that the only damages proved by the appellee as a result of the breach of the implied warranty were the amounts of the judgments obtained against him and what he paid in settlement of a suit brought by another claimant, which total $1,192.50. It is clear that the amount of the appellee's judgment in the lower court was largely influenced by his loss sustained in the sale of the mortgaged property in North Carolina which, as pointed out, the jury should not have considered.

Accordingly, under the authority of *United Constr. Wkrs.* v. *Laburnum, supra,* the amount of the judgment of the lower court in excess of $1,192.50 is stricken therefrom, and the balance of the judgment, in the amount of $1,192.50, is affirmed.

The appellants, having substantially prevailed, shall recover their costs. § 14-178, Code of 1950.

*Modified and affirmed.*