# Richmond.

## HIGHLAND PHARMACY, INC., AND ARTHUR GOLD- MEER v. CARRIE BELLE WHITE.

January 14, 1926.

1. DRUGGISTS—*Negligence—Care to be Exercised by Druggists.*—Druggists deal in many poisonous drugs and medicines, which, if improperly used, may endanger human health and life. They are required to exercise a degree of care fully commensurate with the dangers to which their patrons are exposed, i. e., the highest degree of care.

2. DRUGGISTS—*Prescriptions—Drugs Bought in Bulk and Bottled by Retail Druggists—Implied Warranty—Negligence.*—Where the retailer fills a prescription or buys in bulk and bottles the drug and places his own label on it, he impliedly warrants it to be what he represents it to be, and upon proof of the slightest negligence is liable for any injury resulting from the use of such drug.

3. DRUGGISTS—*Patent Medicines—Liability of Druggists.*—When a druggist delivers to a customer calling for it a patent or proprietary medicine, in the original package, and sealed and labelled by the manufacturer or patentee, in the absence of any knowledge of its ingredients, he cannot be held liable for any injury resulting from its use. He is not required to analyze the contents of each bottle or package he buys and sells in order to relieve himself from liability for such injury.

4. DRUGGISTS—*Negligence—Prima Facie Evidence of Negligence—Burden to Rebut Presumption of Negligence.*—When a patron orders a harmless drug, the druggist is under a legal duty to deliver it to him. If, instead, he delivers to him a harmful drug, from which injury results, he violates his duty and is *prima facie* guilty of negligence. The burden is then upon him to rebut the presumption of negligence. Failing to do so, he is liable for the damages resulting from such injury.

5. DRUGGISTS—*Negligence—Sale of Witch-Hazel Containing Ten Percent Solution of Silver Nitrate—Liability for Burns—Case at Bar.*—In the instant case defendant, a druggist, sold plaintiff a bottle of witch-hazel which upon analysis contained a TenPercent solution of silver nitrate. Plaintiff applied the witch-hazel to her thigh and was severely burned. Defendant testified that he purchased the witch-hazel from a reputable wholesale house in large quantities and that he bottled it in bottles bought from reputable dealers, that came to him steri-

lized and corked, but he could not tell the jury the name of the whole-
saler from which the witch-hazel, corks and bottles involved were
purchased.

*Held:* That defendant failed to rebut the presumption of negligence
and there was sufficient evidence to support a verdict for plaintiff.
Whether the wholesaler was a reputable dealer was a question of
fact to be passed upon by the jury and not by the defendant, and
without the name of the wholesaler the jury could not find that the
defendant purchased the witch-hazel from a reputable dealer.

Error to a judgment of the Circuit Court of the city
of Norfolk, in an action of trespass on the case. Judg-
ment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Herman A. Sacks, Joseph Marcus,* and *Henry Legum,*
for the plaintiffs in error.

*Michael Cooper,* for the defendant in error.

WEST, J., delivered the opinion of the court.

Carrie Belle White brought an action against High-
land Pharmacy, Incorporated, and Arthur Goldmeer,
and recovered a judgment for $500.

In reviewing the case the parties will be referred to
as plaintiff and defendants, with respect to their posi-
tions in the trial court.

The defendant, Highland Pharmacy, Incorporated,
owned a drug store in the city of Norfolk. Defendant,
Arthur Goldmeer, a registered pharmacist of twelve
years' experience, was president of the corporation and
manager of the business.

Carrie Belle White, the plaintiff, a bright mulatto
woman, had the defendant, Arthur Goldmeer, treat a
wound on her thigh, for which he prescribed and sold

her a germicide powder. She used the powder and later sent her friend, Rosa Denson, to the pharmacy to get a bottle of peroxide and a bottle of witch-hazel. Rosa told Goldmeer that these articles were for his patient, Carrie Belle White. He inquired as to Carrie's condition, retired to the rear of the store and later returned and handed Rosa a package containing a bottle of peroxide and a bottle labelled "witch-hazel," which she delivered to the plaintiff, who applied the witch-hazel to her swollen thigh. Immediately her thigh was burned, and turned black, and pained her so severely that she had to secure the services of a physician, who informed her that her burns were caused by the application of a solution of silver-nitrate. Later the contents of the bottle labelled "witch-hazel" were analyzed and found to contain a ten per cent solution of silver nitrate. The plaintiff suffered much from her burns and was confined to her bed for two weeks.

The defendant, Goldmeer, testified that he purchased his witch-hazel from reputable wholesale houses in large quantities; that it came in containers properly labelled "witch-hazel;" that it was poured by him into bottles of varying sizes in which it was sold to the trade; that these bottles were bought from reputable dealers and came to him sterilized and corked; that after the bottles were filled they were properly labelled by him and placed upon the shelves of the store for sale; that he kept his silver-nitrate locked in a drawer and did not sell it in solution except under a doctor's prescription; that if any foreign substance was in the witch-hazel it was not due to any act of the defendants, and that they nor either of them had any knowledge of the presence of such substance; that in purchasing and handling witch-hazel they followed the usual custom obtaining among druggists and exercised the

same degree of care which is usual with all reputable druggists. He named only one firm from which he had purchased witch-hazel, although he had bought it from several other firms. He could not give the names of the reputable wholesale dealers from whom he purchased the empty bottles and corks, nor the name of the firm from which he purchased the witch-hazel which he was selling on September 8, 1924, when he sold it to the plaintiff.

There was also testimony to the effect that when druggists buy witch-hazel in bulk from reputable wholesale houses they never analyze it to see if it is pure.

The only assignment of error is the refusal of the court to set aside the verdict of the jury and enter a final judgment for the defendants, or grant the defendants a new trial, on the ground that the verdict is contrary to the law and the evidence.

[1] Druggists deal in many poisonous drugs and medicines, which, if improperly used, may endanger human health and life. They are required to exercise a degree of care fully commensurate with the dangers to which their patrons are exposed.

[2] Where the retailer fills a prescription or buys in bulk and bottles the drug and places his own label on it, he impliedly warrants it to be what he represents it to be, and upon proof of the slightest negligence is liable for any injury resulting from the use of such drug.

[3] When a druggist delivers to a customer calling for it a patent or proprietary medicine, in the original package, and sealed and labelled by the manufacturer or patentee, in the absence of any knowledge of its ingredients, he cannot be held liable for any injury resulting from its use. He is not required to analyze the contents of each bottle or package he buys and

sells in order to relieve himself from liability for such injury. *West* v. *Emanuel*, 198 Pa. 180, 47 Atl. 965, 53 L. R. A. 329.

[4] When a patron orders a harmless drug, the druggist is under a legal duty to deliver it to him. If, instead, he delivers to him a harmful drug, from which injury results, he violates his duty and is *prima facie* guilty of negligence. The burden is then upon him to rebut the presumption of negligence. Failing to do so, he is liable for the damages resulting from such injury.

"Except in some jurisdictions, evidence that a harmless drug was called for and that by mistake a harmful drug was furnished, is sufficient to establish a *prima facie* case of negligence." 19 C. J. p. 785.

"The law imposes upon a druggist the duty to so conduct his business as to avoid acts in their nature dangerous to the lives of others, and one who is negligent in the performance of such duty is liable for damages to any person injured thereby." 19 C. J. p. 780, citing many cases.

In *Tucker* v. *Graves*, 17 Ala. App. 602, 88 So. 41, the plaintiff asked for six ounces of paregoric, a harmless drug. Instead of the drug asked for, the defendant gave him a six ounce bottle of poison, without telling the plaintiff it was poison. The plaintiff relying on the defendant took a dose of the drug and was seriously injured. The court held it was the duty of the defendant to have sold plaintiff paregoric instead of a poisonous drug; that his failure to do so was a breach of duty and was sufficient when considered with the other facts in the case to warrant the court in finding that the defendant was guilty of negligence in the sale.

In *Peters* v. *Johnson*, 50 W. Va. 644, 41 S. E. 190, 57 L. R. A. 428, 88 Am. St. Rep. 909, where the druggist delivered to the customer saltpeter when he had

asked for epsom salts, the court stated that druggists were required to use the highest degree of care to prevent injury from the use of their drugs and medicines, and held the defendant liable for damages.

In *Edelstein* v. *Cook*, 108 Ohio St. 346, 140 N. E. 765, 31 A. L. R. 1333, the customer asked for a pound of epsom salts, and the defendant, by inadvertence, gave the plaintiff citric acid, a harmful drug. The court said: "His (druggist's) relation to the community is such that there is an obligation cast upon him to see that no harmful or poisonous drug shall be delivered to a customer when a harmless one is asked for; proof of a mistake or inadvertence upon the part of the druggist furnishes an inference sufficient to establish a *prima facie* case. It raises a presumption of negligence which entitles the customer to recover, unless that presumption is rebutted. *Cincinnati Traction Co.* v. *Holzenkamp*, 74 Ohio St. 379, 78 N. E. 529; 6 L. R. A. (N. S.) 800; 113 Am. St. Rep. 980." The judgment for the plaintiff was affirmed.

In *Walton* v. *Boothe*, 34 La. Ann. 913, where the druggist sold and delivered a dose of sulphate of zinc when the customer had asked for epsom salts, the court laid down the doctrine that druggists must use the highest degree of care known among practical men to prevent injury from the use of drugs and poisons dealt in by them, and held the defendant liable for damages.

[5] While the grounds of defense filed by the defendants make no reference to the custom of other druggists in handling witch-hazel, they contend in their petition that the exercise of such care as is usually exercised by reasonably prudent men in like business under similar circumstances should acquit them of any negligence.

Although defendant, Goldmeer, testified that he pur-

chased witch-hazel and small bottles and corks, supposed to be sterilized, in large quantities from reputable wholesale houses, and himself put the witch-hazel in the small bottles at his store prior to or at the time of the sale, as was customary among other reputable druggists in his city, he could not tell the jury the name of the wholesaler from whom the witch-hazel, corks and bottles here involved were purchased.

Whether the wholesaler was a reputable dealer was a question of fact to be passed upon by the jury and not by the defendant. Without the name of the wholesaler the jury could not find that the defendant purchased the witch-hazel from a reputable dealer, or that other reputable druggists in Norfolk had the custom of purchasing from the same dealer.

Besides, it appears from the defendants' evidence that no complaint was ever made by any other purchaser of witch-hazel from the defendants and that they made no inspection of the liquid which they had labelled and sold as witch-hazel to see whether any of the stock on hand, bought in bulk, contained nitrate of silver.

Under these circumstances, the jury might well believe that the nitrate of silver was put in the bottle of witch-hazel by the defendant, Goldmeer, in order to convert it into a germicide solution, which he made stronger than he intended it to be.

We are of the opinion that the defendants have failed to rebut the presumption of negligence, and that there is sufficient evidence to support the verdict of the jury.

*Affirmed.*