Alfonso Linwood CARNEY, Appellant,

v.

SEARS, ROEBUCK AND CO., Appellee.

No. 8602.

United States Court of Appeals Fourth Circuit.

Argued June 8, 1962.

Decided Sept. 27, 1962.

Louis B. Fine, Norfolk, Va. (Howard I. Legum, Norfolk, Va., on brief), for appellant.

Robert M. Furniss, Jr., Norfolk, Va. (Taylor, Gustin, Harris & Furniss, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BRYAN and BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This is an appeal from a judgment for the defendant in the District Court for the Eastern District of Virginia sitting without a jury. Plaintiff is a barber who lives in Norfolk, Virginia, and operates a barber shop and beauty shop there. On June 5, 1959, he purchased a six foot wooden stepladder from Sears, Roebuck & Company, for which he paid $8.98. Plaintiff contended that sixteen months later the ladder collapsed while he was using it, causing him to suffer a comminuted fracture of one wrist and certain back injuries. This action was brought to recover for these injuries. The plaintiff testified that prior to the purchase of the ladder in question he had used in his shops a five foot wooden stepladder of the same type and design as the one he subsequently purchased. This, too, he had bought sometime previously from Sears Roebuck. This five foot ladder was used by the plaintiff and by a shoe shine boy to clean and wash fixtures in his barber shop, dust cobwebs from the ceiling, and for various other purposes. He decided that in order safely to reach the ceiling in the beauty shop, which was ten feet from the floor, he needed a taller ladder. He also testified that one reason he bought the new ladder was because other people often borrowed the one he had.

The evidence shows that the defendant had been advertising this ladder in the morning and evening newspapers in the City of Norfolk, Virginia, about three times a year for the past twelve years. Mr. Carney testified that he had read these advertisements and that because of them he went to Sears Roebuck to purchase the new ladder. The evidence in the record shows only that these advertisements referred to this ladder as a "Workmaster" (a standard trade-mark of the defendant) and that it was "a good quality ladder".

The plaintiff testified that he went to the defendant's store and looked at all of the many types of ladders there displayed. He said that he told the salesman that he had a ten foot ceiling and wanted a ladder tall enough so " * * * that I myself wouldn't have to reach too high to fix lights". He said the salesman "recommended' the ladder he ultimately purchased. The label placed upon the ladder contains the following printed matter:

"This fine ladder was thoroughly inspected and shipped to you in first class condition; damage may occur in shipping or handling * * *

"1. Inspect carefully both on receipt and before each use. * * *"

There followed a long list of instructions for the safe use of ladders generally.

The undisputed evidence in the record shows that the defendant was not the manufacturer of the ladder. The ladder was manufactured by the J. R. Clark company of Minnesota, but the name of the manufacturer does not appear at any place on the ladder and the defendant's name appears on the label attached to the ladder. There was no indication either about the merchandise or in the newspaper that anyone other than the defendant had anything to do with this product.

The plaintiff produced Mr. Thomas B. McDow, a chemist and chemical engineer employed by the McCallum Inspection Company. He testified that he had been engaged in the examination of timber and the products manufactured therefrom and that he had inspected hundreds of ladders. He testified that as to this ladder he found nothing whatever defective in the timber. He said, however, that in his opinion the collapse of the ladder was due to a defectively headed rivet which connected a folding cross brace between two legs. He said that upon the failure of this rivet there was

nothing to prevent the ladder from collapsing since the brace was all that kept the legs from spreading all the way apart. He said that in his opinion the rivet had not been squarely struck by the heading tool and that as a result had an extremely small head, one so small in fact that it would not withstand continued strain. He stated that in his opinion the ladder was not properly constructed because of this defect and that when plaintiff put his weight upon the ladder, in his opinion, the head pulled through the wood, releasing the brace from one leg and causing the collapse.

The Court found that plaintiff was standing on the fourth step from the bottom. The plaintiff testified that the ladder did not fall sideways or forward or backward, but simply opened up, letting him fall to the floor on top of it. He further said that he had never had any trouble with the ladder since he bought it. He said that he had read the label on the ladder and that he had inspected it. He said that the ladder was used mostly by the shop boy for cleaning the light fixtures and dusting cobwebs on the walls and ceiling, and that as a general rule it was used two or three times a month. On cross examination he said that the ladder was not used very frequently and that thirty days might elapse before there was any reason to use it. He conceded that there might be an occasional week when it would be used three or four times, but that these were "very, very seldom".

The plaintiff based his claim for recovery upon breach of an express warranty, breach of implied warranty, and negligence of the defendant as a distributor of a defectively made product which it had led the plaintiff to believe was manufactured by it. The Court below ruled that there was no basis for an express warranty, or an implied warranty of fitness for a particular purpose. The Court found no breach of the implied warranty of merchantability nor any breach of duty amounting to negligence in the course of manufacture, because the ladder, " * * * had been in nor-mal use, without apparent defect, for more than fifteen months [and this] is cogent evidence that it was reasonably adapted to the purposes for which it was sold." In these latter conclusions we think the District Court committed error.

■ We are here concerned with the two types of warranty: Express and Implied. An express warranty is any affirmation concerning the character, quality or condition of goods, having the effect of inducing a sale, if the buyer purchases the goods relying thereon. Herron v. Dibrell, 87 Va. 289, 12 S.E. 674 (1891); Milburn Wagon Co. v. Nisewarner, 90 Va. 714, 19 S.E. 846 (1894); McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 74 S.E.2d 165 (1953).

■ On the other hand, implied warranties arise by operation of law without regard to the expressed intention of the parties. They are of two kinds: an implied warranty of merchantability or fitness for the general purpose for which the goods are sold, and an implied warranty of fitness for a particular purpose. The term merchantability applies when goods are purchased for resale and means simply that they are of a quality or character which will qualify them to be bought and sold in the ordinary course of business, and is for our purposes interchangeable with the term fitness for the general purpose for which the goods are sold—which latter term is ordinarily used in discussing a sale to a consumer.

■ Where a buyer orders goods to be supplied for a particular purpose communicated to the seller and trusts to or relies upon the judgment or experience of the seller to select the goods which shall be applicable to and suitable for that purpose, there is an implied warranty that they shall be reasonably fit therefor. Gerst v. Jones, 32 Grat. (Va.) 518; Greenland Develop. Corp. v. Allied Heat. Prod. Co., 184 Va. 588, 35 S.E.2d 801, 164 A.L.R. 1312 (1945); E. I. Du Pont De Nemours & Co. v. Universal M. P. Corp., 191 Va. 525, 62 S.E.2d 233 (1951).

■■ We have in this case no difficulty with the question of privity upon the theory of breach of an implied warranty of merchantability. It is undisputed that the ladder was bought by the plaintiff from the defendant. Therefore, there was a contractual duty running from the defendant to the plaintiff to use reasonable care in providing to him a saleable product. Likewise, there is no difficulty with privity of contract on the theory of negligence for the contractual duty raised by the purchase is one which if breached negligently by the defendant is a basis for liability in tort.*

■ However, since the defect in this ladder arose in the course of manufacture, the plaintiff in an action for negligence must fasten upon the defendant the duty of a manufacturer. This he has attempted to do by showing that the defendant sold the product to him as its own without indicating that it had been manufactured by another. The applicable rule of law as indicated by Judge Soper in Swift & Co. v. Blackwell, 84 F.2d 130 (4 Cir. 1936) is that:

"One who puts out as his own product chattels made by others is under a duty to exercise care, proportionate to the danger involved in the use of the chattels if improperly made, to secure the adoption of a proper formula or plan and the use of safe materials and to inspect the chattel when made. But he does not escape liability by so doing. By putting a chattel out as his own product, he causes it to be used in reliance upon his care in making it. Therefore, he is liable if, because of some negligence in its fabrication or through lack of proper inspection during the process of manufacture,

the article is in a dangerous defective condition which the vendor could not discover after it was delivered to him." Restatement of the Law of Torts, Vol. 2, § 400, comment c.

■ We think it clear that the defendant falls within the scope of this rule, which has been accepted in the State of Virginia. See Highland Pharmacy v. White, 144 Va. 106, 131 S.E. 198, 44 A.L.R. 1478. The defendant has contended that this rule should not be applied to it because of a corollary to the rule that it is not to be applied where the seller is known to carry on only a retail business. There is some evidence in the record that Sears, Roebuck & Company carried on primarily a retail business. However, the evidence does not show that this is a fact of such general knowledge that everyone may be presumed to know it or that this particular plaintiff knew of it. The basis of the rule is that where the vendor puts only its name upon the product without indicating that it is actually the product of another then the public is induced by its reasonable belief that it is the product of the vendor to rely upon the skill of the vendor and not upon the skill of any other. Therefore, the basic test is whether or not the vendee reasonably believed in and relied upon the vendor's apparent manufacture of the product. There is positive uncontradicted testimony in the record that the plaintiff had seen this latter advertised under the defendant's trade name in the newspapers and that he had observed the defendant's name upon the ladder. Moreover, there is nothing in the record showing in any way that the defendant ever indicated that someone else manu-

---

* It is worthy of specific comment that the Virginia General Assembly has abolished lack of privity as a defense available to a manufacturer or seller of goods in an action for damages based upon, " * * * [B]reach of warranty, express or implied, or for negligence. * * * " That statute cannot be applied to the present case, however, since by its express terms it is not intended to apply to any case

arising before its effective date. The effective date of this legislation is June 29, 1962.

For a penetrating analysis of this legislation, setting it in the context of the established decisional rules of Virginia on privity of contract, see, Emroch, "Statutory Elimination of Privity Requirement in Products Liability Cases", 48 Va.L. Rev. 982 (1962).

factured the ladder. There is likewise no evidence that the plaintiff had any knowledge of the fact that it was manufactured by someone other than the defendant. Therefore, we think that the plaintiff reasonably believed this ladder to be the product of the defendant and reasonably relied upon its skill and judgment in manufacturing and distributing the product. The fact that the defendant did not at any time say it was the manufacturer of the product is immaterial if there were reasonable grounds to believe it to be the manufacturer. Swift & Co. v. Blackwell, supra.

■ We think that there is no basis on this record for a finding of an express warranty because there is no showing in the evidence that the defendant ever made any statement, either in its advertisements or in the label on the ladder, which amounts to an affirmation of fact of the type necessary to raise an express warranty. In determining whether an affirmation at the time of sale is intended to be a warranty,

"* * * [T]he decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion upon a matter of which the vendor has no special knowledge, and upon which a buyer may also be expected to have an opinion, and to exercise his judgment." Reese v. Bates, 94 Va. 321, 26 S.E. 865, (1897) (at 26 S.E. 869).

■ We find no basis for an implied warranty of fitness for a particular purpose because it is not shown in the evidence that the selection of a ladder suitable for plaintiff's purposes was exclusively within the control of the defendant's salesman. Such a showing is necessary to raise this kind of implied warranty.

"As a general rule, therefore, a sale in the usual course of trade, of a specific standard article dealt in on the market, does not import a warranty of quality, nor a warranty of fitness for a particular purpose,

although or merely because the seller is informed of such purpose." Universal Motor Co. v. Snow, 149 Va. 690, 140 S.E. 653, 59 A.L.R. 1174 (1927) (at 140 S.E. 654). See also, Mason v. Chappell, 15 Grat. (56 Va.) 572 (1860).

Here the evidence shows that the plaintiff in fact selected the ladder; at the very least, that he did not rely solely upon the salesman's judgment in selecting the ladder. His discretion and judgment played a major part in the selection of the ladder which he ultimately purchased.

■ We come now to the Court's holding that the lapse of over fifteen months between the time of sale and the collapse of the ladder bars recovery either for breach of a warranty of merchantability or for negligent manufacture of the product. On all the facts of this case we think the Court was in error in giving so weighty a legal effect to the passage of time. If in fact the ladder was negligently constructed and such negligence rendered the ladder unfit for the purposes to which it would normally be put, then the defendant is liable for breach of an implied warranty of merchantability. If such negligence resulted in a reasonably foreseeable collapse of the ladder while the plaintiff was standing upon it, to his injury, then defendant is liable as a manufacturer for this negligence.

However, in establishing the fact of negligence in manufacture of the ladder, the time between the sale and collapse of it is a factor to be considered. Judge Medina, speaking in Fredericks v. American Export Lines, 227 F.2d 450 (2 Cir. 1955), stated:

"The mere passage of time *confers no immunity upon a negligent wrongdoer;* but it has relevance to the likelihood, depending upon the circumstances of the particular case, that deterioration due to use, perhaps accelerated by misuse, will be mistaken * * * for a defect due to negligent manufacture or fabrication." (Emphasis added). At 452.

In other words, lapse of time is but another fact to be considered in relation to all the other facts in the case showing negligence. Only where there are no other facts in the case showing, or tending to show, a breach of duty, is it proper to make lapse of time, without more, a bar to recovery as a matter of law.

The cases cited by defendant in which courts failed to sustain claims based upon long periods of use of such items as lawn mowers, threshing machines, internal combustion engines, circular saws, tractors, etc., are hardly comparable in determining the reasonable wear to be expected from a stepladder. A court might hold as a matter of law that the mere fact that a moving part in a machine broke after X number of years of use was not sufficient evidence of negligence in manufacture to go to a jury under a given set of circumstances, but this would not justify the legal conclusions reached in this case.

We are not able to conclude that the Court found facts upon which this Court would be justified in entering judgment for the plaintiff on the issue of liability. In one of its findings the Court said: "Plaintiff was injured when the stepladder collapsed while he was in the process of changing a light bulb. * *" However, in another finding the Court said,

> "The principal difficulty with any negligence theory predicated upon an alleged failure to properly inspect is that such an extended period of time has elapsed between the purchase of the ladder and its breaking, *if it did indeed break*." (Emphasis added).

We are unable to tell whether the Court was persuaded by a preponderance of the evidence either of the cause or the fact of the ladder's collapse. Further, we are unable to tell whether or not the Court thought the defendant had in fact negligently failed to inspect the ladder. Additionally, we cannot determine whether the plaintiff, in the opinion of that Court, made such inspection or inspec-

tions of the ladder before use as would be required, if any, by due care on the part of the user. Since the Court did not need to reach these questions because of its improper legal conclusion that defendant could not be held liable, we are unable to determine what weight to give to the somewhat conflicting findings of fact.

We are, therefore, forced to remand the case in order that further and consistent findings may be made.

Reversed and Remanded.