CHRYSLER CORPORATION, et
al., Appellants,

v.

Kenneth SCHUENEMANN, et
ux., Appellees.

No. 17832.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 30, 1981.

Rehearing Denied June 4, 1981.

Lapin, Totz & Mayer, Mark Blenden, Funderburk & Funderburk, Don Karotkin, Houston, for appellants.

Billy H. Pollard, Houston, for appellees.

Before COLEMAN, C. J., and PEDEN and SMITH, JJ.

COLEMAN, Chief Justice.

This is an appeal from a judgment awarding damages under the provisions of the Texas Consumer Protection Act (DTPA)[1] in a suit growing out of the purchase of a new Cobra LaCross motor home. The case was tried to the court without a jury. Findings of fact and conclusions of law were filed.

In 1978 Kenneth Schuenemann and his wife, Bernadine Schuenemann, sued the Chrysler Corporation (Chrysler), Cobra In-dustries, Incorporated (Cobra), and Bob Dues Outdoor World, Inc. (Outdoor World), alleging in general terms that the defendants violated certain express and implied warranties, and misrepresented the characteristics or uses of the Cobra LaCross Dodge motor home which they had purchased from Bob Dues Outdoor World, Inc. The motor home shell and interior were constructed by Cobra and installed upon a Dodge chassis which Cobra purchased from Chrysler. The court awarded damages in the total sum of $75,709, plus interest and attorney's fees, against the three defendants jointly and severally. Each of the defendants perfected appeals, but only Chrysler and Cobra filed briefs in the case.

On July 6, 1977, the appellees purchased the 1977 model Cobra Dodge motor home for "recreational enjoyment" from Outdoor World for a total price $31,000, which included a time price differential of $9,157.28. Mr. Schuenemann traded in a Pontiac station wagon and entered into a time payment contract whereby he financed the balance due of $26,600.28.

On the day of purchase, a sales representative of Outdoor World took the appellees on a walk through the motor home and explained all the different features and warranties. The appellees were given at this time a "dealer pre-delivered checkout and warranty registration," the original of which they were required to mail to Cobra within seven days from the date of purchase to validate the warranty. This instrument contained a number of checklists and a certification by the dealer and the pre-delivery checkouts had been completed and that the recreational vehicle and all of its systems were in "travel-ready" condition. The appellees were also furnished a Dodge "New Vehicle Preparation" form for inspection and road tests. This showed that the dealer was Loche Mandy Dodge of Elkhart, Indiana. It contained a vehicle identification number and certified that "this vehicle has been inspected and road tested,

1. Vernon's Texas Business and Commerce Code, Annotated, Section 17.41, *et seq.* The Consumer Protection Act, originally enacted on May 21, 1973, was amended effective September 1, 1975 and effective May 23, 1977. The references herein to the Act pertain to the Statute as amended and effective in 1977. Tex. Laws, 1977, ch. 216 at 600–605.

and that adjustments were performed as indicated by the check marks in the below boxes." This instrument certified that all components under the hood of the vehicle were properly assembled and operated properly. It certified that all of the lights including interior, exterior, and instrument panel lights and warning systems were operating properly. It also certified that the steering column, ignition lock, the starter switch, the instruments and gauges, the engine and transmission transfer case performances (including shift quality), windshield wipers, heater, horn and other factory installed accessories were in proper operating condition. On the back of the new vehicle preparation form was a list of items provided as a reminder of the details which constitute a thorough inspection. Among the items listed was the underhood electrical wiring, the battery, and the charging system.

Mr. Schuenemann began to have trouble with the vehicle "right from the onset." Within two or three days after taking possession of the motor home, he took it back to the dealer because the vehicle would not start properly and one of the gauges was not reading properly. From July 21, 1977, through June 2, 1978, Mr. Schuenemann made eleven separate attempts to repair the motor home. The vehicle had numerous problems involving brakes, power steering, alternator, gas gauges, monitoring gauges, batteries, turn signals, water leaks, the heating system, and the general electrical system. The primary problem appeared to be with the electrical system. The vehicle could not be driven at night with the lights on or during the day with the air conditioner or radio in operation. Mr. Schuenemann testified that even when he was not using any of the accessories during the day time the battery would still lose its charge, and if he stopped to get gas he would not be able to restart the vehicle.

There was testimony that Cobra installed the motor home body on the chassis furnished by Chrysler. Various accessories, such as air conditioning equipment, a stove and a refrigerator were installed either by their manufacturer or by Cobra. The electrical system which supported the lights and accessories installed in the body of the motor home was installed by Cobra. Additionally there was a battery and a gasoline motor driven generator installed by Cobra so that 110 volt electrical power would be available when the vehicle's motor was not running.

Written warranties from Cobra and Chrysler were introduced as exhibits and accepted into evidence upon Mr. Schuenemann's testimony that they were given to him by the salesman when the vehicle was delivered to him. Plaintiff's exhibit number 3 was entitled "Chrysler Corporation's Limited Warranty For New, 1977 Model Passenger Cars and Truck Models 100–400 Excluding Truck Chassis Used for Commercial/Special Purpose/Motor Home/Recreational Type Vehicles." This instrument contains these significant statements: "Any implied warranty applicable to this vehicle is limited in duration to the duration of this written warranty;" and "A separate, limited warranty is issued and applies to Dodge 'Truck Chassis' which are used for commercial/special purpose/motor homes/recreational type vehicles." There is a provision that states:

> For the first 12 months or 12,000 miles . . . of use, whichever occurs first, any part of this vehicle supplied by Chrysler, except tires, which proves defective in normal use will be repaired or replaced by the Selling Dealer using new or remanufactured parts. In addition, the selling dealer will perform any adjustment service required as a result of a manufacturing deficiency during the first 90 days of normal use.

The Cobra written warranty states that for a period of one year from the date of delivery it will repair or, at its option, replace any defective or malfunctioning part of that vehicle except the automotive chassis components, tires, batteries, brake linings, and brake magnets. It also states that Cobra does not authorize any seller of its products to make any other representation or warranty beyond those listed in the written agreement and that implied warranties are limited to the duration of the express warranty, which is one year from the date of delivery to the original retail purchaser.

In response to a proper request the trial court filed the following findings of fact:

1. On or about July 6, 1977, Plaintiffs purchased and received delivery of a 1977 Cobra Dodge recreational vehicle from Defendant, Bob Dues Outdoor World, Inc., an authorized dealer of said vehicle.

2. The total consideration Plaintiffs parted with in the purchase of the vehicle in question was Nineteen Thousand Two Hundred Thirteen Dollars ($19,213.00).

3. The vehicle in question was comprised of manufactured products of defendants, Chrysler Corporation and Cobra Industries, Inc.

4. There existed, at the time of said purchase, express and implied warranties of the vehicle's fitness and suitability for the ordinary purpose for which the vehicle was sold to and was to be used by the plaintiffs.

5. The vehicle in question was defective.

6. Defendants received adequate notice of the defective conditions of the vehicle in question.

7. Subsequent attempts to repair by all Defendants were not effective to make the vehicle operable on a reliable basis for the use and purpose for which said vehicle was sold and was to be used by Plaintiffs.

8. The value of the vehicle that the Plaintiffs purchased and received was zero (0).

9. Pursuant to Plaintiffs' purchase of said vehicle, Plaintiffs executed a retail installment contract, resulting in interest payments made by Plaintiffs in the amount of Six Thousand Twenty-Three and 66/100 dollars ($6,023.66).

10. The actions of the Defendants were deceptive trade practices pursuant to applicable provisions of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus.Comm. Code, 17.41 et seq. (As amended May 23, 1977).

11. Plaintiffs are entitled to have their damages trebled and to receive reasonable attorney's fees and costs of Court.

### Appeal of Chrysler Corporation

By its first three points of error Chrysler contends that the trial court erred in rendering a judgment of liability against Chrysler Corporation based upon a finding that the actions of Chrysler were deceptive trade practices, because as a matter of law, (1) Chrysler discharged its obligations under the express written warranty; (2) there was no evidence of probative value to support such a finding; and (3) such finding was against the great weight and preponderance of the evidence.

Under these three points of error Chrysler contends that the Dodge chassis upon which the motor home was built was sold as a unit with the motor home pursuant to Chrysler Corporation's express written warranty (plaintiff's exhibit 3), which was a limited (repair or replace) warranty. Chrysler contends that limited warranties are permissible under Section 2.316 of the Tex.Bus. & Comm.Code Ann. (Vernon 1968). Chrysler asserts that where there is an express written warranty, the seller will not be bound beyond the terms of the warranty. In support of this proposition it cites *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r. e.); *Import Motors, Inc. v. Matthews*, 557 S.W.2d 807 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.).

The Chrysler warranty introduced into evidence as plaintiff's exhibit number 3 contains this provision: "A separate, limited warranty is issued and applies to Dodge 'truck chassis' which are used for commercial/special purpose/motor home/recreational type vehicles." The vehicle involved in this case would fall within the description the warranty specifically excludes. The special separate limited warranty is not in evidence. There is no basis under the evidence for an exclusion of implied warranties.

The provisions of the DTPA in effect in 1977 govern the disposition of this case. *Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980). Section 17.50(a)(2) provides that a consumer may maintain an action if he has been adversely affected by a breach of an express or implied warranty.

In its arguments under the first three points of error Chrysler attacks only finding of fact number ten. This attack is solely based on Chrysler's contention that it made good faith efforts to repair the vehicle when repairs were requested and thereby discharged its obligation under the express warranty. Findings of fact four through seven establish the breach of an implied warrenty of fitness and suitability for the ordinary purpose for which the vehicle was sold. These findings have not been challenged by Chrysler and establish Chrysler's liability for damages. *Cameron v. Terrell and Garrett, Inc.*, 242 Tex.Sup.Ct.J. 265, 618 S.W.2d 535 (1981); *Carney v. Sears, Roebuck and Co.*, 309 F.2d 300 (4th Cir. 1962). Chrysler's points one through three do not present error.

Chrysler also asserts that the trial court erred in rendering a judgment for damages in the amount of the full purchase price of the vehicle, in that such a measure of damages is, as a matter of law, improper. It also asserts that the trial court erred in rendering a judgment for damages against Chrysler because there was no evidence of any probative value upon which a finding of damages could be based and also because such judgment was based upon insufficient evidence.

The trial court found that the value of the vehicle the plaintiff purchased and received was zero and that pursuant to plaintiff's purchase of said vehicle, plaintiffs executed a retail installment contract, resulting in interest payments made by plaintiffs in the amount of six thousand twenty-three dollars and sixty-six cents ($6,023.66). Finally, the court found that "plaintiffs are entitled to have their damages trebled and to recover reasonable attorney's fees and costs of court."

The trial court permitted Larry Martz to testify as an expert witness. He testified that he had thirty years experience with recreational vehicles. For the last year and one-half he has been employed by Al Loche as service manager and in that capacity has worked on Cobra recreational vehicles many times. He has inspected the Schuenemann's vehicle on two occasions. He testified that he had been selling all of his life, but that he had been selling Cobras just the last year and one-half. When he inspected the Schuenemann vehicle he was unable to start the engine. He testified that the vehicle was defective but that he did not know exactly what the trouble was. He testified that at the time he saw the vehicle in its defective state it was worth nothing. He stated:

> Recreational vehicles are designed and manufactured and sold with the idea of people going on a vacation and going camping and to do the things a vehicle was designed to do without any worry. If you can't drive it, you can't start it, then it is not worth anything, anytime, new or used.

Mr. Martz later explained that he was not saying the vehicle had no salvage value, but that if it was not operable it was not worth anything.

He further testified that the electrical system installed in the body manufactured by Cobra ties directly into the wiring harness installed in the chassis by Chrysler. There is an isolater between the electrical system that Cobra puts in and the electrical system that is present when Chrysler delivers the chassis. A battery installed by Cobra will operate the electrical system when the motor is not running. The isolater permits one battery to remain in service. It is his experience that if the isolater develops a problem it will burn up and that when that happens "the rear battery does not receive a charge when the engine is running and the front system is all by itself." If the isolater is working properly a short on one electrical system will not drain the other electrical system.

Finally, Mr. Martz testified that the vehicle had some value for salvage if one can find a buyer. He testified that he had no

idea whether a buyer could be found. He had two inoperable motor coaches in his salvage yard for which he had been unable to find a buyer for eight months.

The general principle governing damages for breach of contract is that the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed. In a case involving a sale of personal property the measure of damages is the difference between the cash market value of the article as delivered and what its value would have been if it had been as warranted. In the absence of other proof of market value as warranted, the price agreed upon between the parties may be taken as the market value of that for which the parties contracted. If an article sold and warranted has some value, the complaining party is not entitled to recover the full amount he has paid, but is limited to the difference in value as above stated. If the article has no value at all, then the amount paid may be recovered. *Smith v. Kinslow*, 598 S.W.2d 910 (Tex.Civ.App.—Dallas 1980, no writ).

The DTPA provides for the recovery of actual damages, those recoverable at common law. *Brown v. American Transfer & Storage Company*, 601 S.W.2d 931 (Tex. 1980).

Paragraph 2.714(b) of the Texas Business and Commerce Code Annotated (Vernon 1968), reads:

The measure of damages for a breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

See *Neuman v. Spector Wrecking & Salvage Co., Inc.*, 490 S.W.2d 875 (Tex.Civ.App. —Beaumont 1973, no writ).

The burden of producing sufficient evidence to support findings of the elements of the proper measure of damages rests on the plaintiff. Here the plaintiff relies on the testimony of Larry Martz. In *Bavarian Auto Haus, Inc. v. Holland*, 570 S.W.2d 110, 115 (Tex.Civ.App.—[1st Dist.] 1978, no writ), this court stated:

In Texas the qualifications of a witness to give value testimony are knowledge of the general value standard of things in that particular class and knowledge of the particular thing to be valued. The witness must have a knowledge of the market value (if there is one) in the vicinity, and it must be based in some degree on personal observation. Probably the most satisfactory rule is that any one familiar with the values in question may testify.

Mr. Martz's testimony is sufficient to support a finding by the trial court that Mr. Martz had knowledge of the general value standard of the Cobra LaCross Dodge Motor Homes in Galveston County, Texas, and that his knowledge was based upon personal observation. There was no error in permitting him to testify as an expert.

The record contains no direct testimony of the market value of the recreational vehicle in its defective condition at the time of sale. The only evidence of the market value of the vehicle had it been in the condition warranted is the actual purchase price. In the absence of other proof of the market value as warranted, the price agreed on between the parties is sufficient evidence to support a fact finding. *Smith v. Kinslow*, supra.

Section 17.50 of the DTPA, provides:
(b) in a suit filed under this section, each consumer who prevails may obtain:
(1) three times the amount of actual damages plus court costs and attorney's fees reasonable in relation to the amount of work expended;
(2) an order enjoining such acts or failure to act;
(3) orders necessary to restore to any party to the suit any money or property, real or personal which may have been acquired in violation of this subchapter; and
(4) any other relief which the court deems proper, including the appointment of a receiver . . . if the judgment has not

been satisfied within three months of the date of the final judgment.

The Statute lists alternative remedies available to the consumer. *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977). In this case the court stated:

> Given the position of "may" it cannot be doubted that the Legislature intended "may" to indicate that the consumer had several remedies from which to chose and that the court is to grant the consumer that relief which the consumer proves the right to receive.

Id. at 669.

 The plaintiffs allege that they were adversely affected by certain breaches of warranty and deceptive trade practices and suffered "actual damages in amount exceeding minimal jurisdictional requirements of this court." They prayed that they "have judgment against defendants for three times the amount of actual damages, plus court costs and reasonable attorney's fees...." The plaintiffs relied on sub-section (b)(1). Accordingly, damages must be awarded, if at all, under this section. *Cordrey v. Armstrong*, 553 S.W.2d 798 (Tex. Civ.App.—Beaumont 1977, no writ).

 Chrysler contends that the trial court erred in rendering a judgment for damages in the amount of the full purchase price of the vehicle because such a measure of damages is improper as a matter of law. Under this point Chrysler has attacked the trial court's finding that the value of the vehicle in its defective state was zero. By additional points of error Chrysler contends that there is no evidence of any probative value upon which a finding of damages could be based. The trial court found the value of the vehicle which the plaintiff received and the consideration paid by plaintiff in the purchase of the machine. While these findings were not artfully composed, they can be construed as findings that the fair market value of the vehicle had it been in the condition represented was $19,213 and that there was no market value for the vehicle in its defective condition. In addition the court found that plaintiff had paid interest under the retail installment contract in the amount of $6,023.66. The court

also made findings as to reasonable attorney's fees. By the conclusion of law the court determined that the plaintiffs were entitled to recover three times the agreed consideration plus the interest as actual damages. No objections were made to the findings of fact and conclusions of law in the trial court. There were no requests for additional findings of fact.

The cost to a purchaser of a new vehicle is some evidence of its cash market value. Under the court's findings it is possible that the measure of damages applied by the trial court was the difference between the cash market value of the vehicle in its defective condition and the cash market value of the vehicle had it been in the condition warranted. It is also possible that he was applying the measure of damages approved in *Smith v. Kinslow*, supra. In any event we cannot find as a matter of law that the court applied an improper measure of damages. There was some evidence of probative value to support the findings of fact made by the trial court with reference to damages.

 Chrysler's point of error number seven, which asserts that the trial court erred in rendering a judgment for damages against Chrysler Corporation because such judgment was based on insufficient evidence, cannot be sustained. A point of error which states that "the trial court erred in rendering judgment on the verdict because of the state of the evidence—if it is adequate for any purpose—is only a no evidence point." *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970). Point of error number seven does not present reversible error since the judgment is supported by sufficient evidence.

The court found that by reason of plaintiffs' purchase of the vehicle they executed a retail installment contract which resulted in interest payment made by the plaintiffs in the amount of $6,023.66. The Chrysler points of error numbers eight and nine contend that there is no evidence to support such a finding and point of error number ten contends that the interest charge was

not a proper element of damages in this case. The retail installment contract between Bob Dues Outdoor World, Inc., and Kenneth Schuenemann, introduced in the evidence as plaintiff's exhibit number two, recites a finance charge in the sum of $9,157.28 and that this reflects an annual percentage rate of 12.93% of the unpaid balance of $17,443. The buyer agreed to pay $316.67 on the sixth day of each month commencing in August of 1977. There was testimony that all installments were paid up to the date of trial.

■■■■■■ Where a buyer purchases goods on credit, and the purchase is induced by deceptive trade practices, the interest or finance charges which he becomes bound to pay by reason of the purchase constitute actual damage. *Smith v. Baldwin*, 611 S.W.2d 611 (Tex.1980). Points eight, nine and ten do not present error.

Since the provisions of the DTPA in effect on the date of the occurrence of the breaches of warranty and the misrepresentations forming the basis of the case govern, the trial court did not err in awarding treble damages. *Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980).

■■■ Chrysler contends that the trial court erred in awarding attorney's fees to appellees because there was insufficient evidence to support such an award. The plaintiffs' attorney testified as to the number of hours he spent in preparation and trial of the case and named a sum of money which he considered to be a reasonable hourly charge for his services. This is evidence sufficient to support the award for services in the trial court. However, there is no evidence to support the award for future appellate services on behalf of this attorney. The other points of error raised by Chrysler have been covered by the discussion of previous points. They do not present error.

### Appeal of Cobra Industries

Cobra Industries contends that the trial court erred in admitting into evidence plaintiffs' exhibit number two, the retail installment contract previously discussed, on the basis that it was hearsay. It also urged that the trial court erred in making finding of fact number nine, relating to interest payments made by the plaintiffs, because there was no pleading and no evidence to support the finding, and because the finding was against the great weight and preponderance of the evidence. It further asserted that the court erred in awarding recovery for interest which was allegedly paid to a third party under an installment sales contract.

■■■■ It is undisputed that Bob Dues Outdoor World was an authorized agent for the sale of motor homes manufactured by Cobra. The contract signed by its duly authorized sales agent does not constitute hearsay evidence as to Cobra Industries. The recitations contained in the instrument constitute sufficient evidence to support finding of fact number nine. The plaintiffs' pleadings were general, asserting a cause of action for actual damage. The interest which the plaintiffs agreed to pay to the seller as part of the purchase price of the vehicle constituted an item of the actual damage suffered by them. In the absence of a special exception to the plaintiffs' petition, the broad pleading was sufficient. The plaintiffs are not required to plead evidence.

■■■ Cobra has attacked finding of fact number ten by no evidence and insufficient evidence points. The evidence is fully sufficient to support a finding that the actions of Cobra were deceptive trade practices pursuant to the applicable provisions of the DTPA. In addition to the testimony of the representations made by the Bob Dues Outdoor World, plaintiffs' exhibit four contained promotional material concerning the 1977 Cobra Century Series Motor Homes. This literature contains such statements as "Cobra Industries has produced some of the most admired recreational vehicles distinguished by their stunning design, interior elegance and superb construction.... You find in every Cobra product a tradition of sound engineering, advanced styling, innovation, and quality craftsmanship." These representations would support a finding that Cobra represented that the Cobra La-

Cross Dodge motor home was of a particular standard, quality or grade when, in fact, it was of another. *Pennington v. Singleton,* supra. In addition the evidence supports a finding that the implied warranty of fitness for the purpose for which it was sold was breached by Cobra. The specific findings of fact made by the court together with presumed findings on other elements of the grounds of recovery embraced in the findings of fact support the judgment of the trial court. Finding of fact number ten is merely an element of the ground of recovery pled by the plaintiffs. *Bednarz v. State,* 142 Tex. 138, 176 S.W.2d 562 (1944).

Cobra has also asserted that conclusion of law number five, stating that plaintiffs shall relinquish the recreational vehicle in question to defendants upon "total satisfaction in payment of the damages," attorney's fees and cost, constitutes error in that there were no pleadings to support such a conclusion of law. If error, this conclusion was not harmful to Cobra. It was favorable to Cobra, permitting it to recoup some of the damages awarded against it.

Cobra also asserted that the trial court erred in making its conclusion of law concerning attorney's fees because there was insufficient evidence to support such finding. This contention has been discussed with reference to Chrysler's points of error and is sustained in part.

Other points of error presented by Cobra have been discussed in connection with the points of error presented by Chrysler. After careful consideration of these points we consider that they do not present error.

The judgment will be reformed by deleting the award of damages for attorney's fees for services to be rendered in an appeal to the Court of Civil Appeals and to the Supreme Court and as reformed is affirmed.

The appeal of Bob Dues Outdoor World, Inc. is dismissed for want of prosecution.